*5 OPINION OF THE COURT
Fuchsberg, J.
On this appeal we for the first time meet section 120 of the Workers’ (formerly Workmen’s) Compensation Law head-on. This relatively recently enacted statute forbids employers to discharge or otherwise discriminate against employees who claim compensation for job-related injuries or who testify in proceedings to enforce such payment. Its violation subjects the employer to a statutory penalty and entitles the mistreated employee to be reinstated and reimbursed for any wages lost as a result of the discrimination.[1]
The case comes to us in the following context: On April 9, 1973, at the instance of a third party, Barbara Axel, a computer programmer employed by the Duffy-Mott Company, sustained a serious injury to her right arm as a result of which she later filed a compensation claim against her employer. On January 25, 1974, two days after she had testified at a hearing on her claim, Duffy-Mott terminated her employment. According to the complaint filed by Ms. Axel with the compensation board, her discharge was in retaliation for her prosecution of the injury claim. Duffy-Mott contends that its action was premised solely on a deterioration in job performance and on a dispute the employee had with a supervisor. After a hearing, the workers’ compensation referee resolved the issue in the employee’s favor, a determination thereafter unanimously affirmed by a three-member panel of the board itself. However, on appeal to the Appellate Division, that court, by a vote of three to two, reversed and dismissed the claim (62 AD2d 651). It held as a matter of law that the evidence established that Ms. Axel’s discharge was based on permissible, nonretaliatory grounds. For the reasons that follow, we reverse.
Initially staking out some of the guideposts by which this appeal is to be approached, we first note section 120’s self-evident purpose — to insure that employees may exercise their rights under the compensation statutes without fear that doing so will prejudice them in their employment (see Department of Labor Memorandum on L 1973, ch 235, NY Legis Ann, 1973, p 244; 2A Larson, Workmen’s Compensation Law, *6 § 68.36).[2] As with retaliation statutes generally, it also may be said to promote the integrity of board proceedings by encouraging employees to speak openly and honestly at compensation hearings, whereas unremedied retaliation tends to stifle not only the particular employee against whom it is directed but all others who become aware of the fact that reprisal can be taken with impunity (see Lopatka, Protection Under the National Labor Relations Act and Title VII of the Civil Rights Act for Employees Who Protest Discrimination in Private Employment, 50 NYU L Rev 1179, 1195).
 It is also pertinent to observe the difference between the basic standards by which the board was governed in reaching its decision, and those to which the quasi-judicial determination it arrived at was to be subjected on judicial review. It was the board’s prerogative to weigh the evidence and decide the case in favor of the party whose proofs, in its view, preponderated (cf. 3 Larson, Workmen’s Compensation Law, § 80.20). As to pure questions of fact and factual inferences to be drawn therefrom, it needs no supporting citations to recite that a decision of the board is conclusive upon the courts if supported by substantial evidence. It is equally well established that it is not the role of a reviewing court to substitute its view of the factual merits of a controversy for that of an administrative agency (cf. Matter of Malacarne v City of Yonkers Parking Auth., 41 NY2d 189, 193; Matter of Fisher [Levine] 36 NY2d 146, 150).
Of course, in searching the record for the presence of substantial evidence in a case premised on an alleged violation of a statute purposed to counter retaliation or other discrimination, we must keep in mind that those engaged in such conduct rarely broadcast their intentions to the world. Rather, employers who practice retaliation may be expected to seek to avoid detection, and it is hardly to be supposed that they will not try to accomplish their aims by subtle rather than obvious methods (see, generally, Matter of Holland v Edwards, 307 NY 38, 45; State Div. of Human Rights v Kilian Mfg. Corp., 35 NY2d 201, 209-210). Moreover, employers are *7 vested with considerable discretion in the hiring and firing of their employees so as to maintain an efficient and productive work force, and the visible manifestations of even a most improperly motivated discharge may be difficult to sort out from a nonretaliatory exercise of this discretion.
Inspecting the record here with sensitivity to these factors, we are convinced that, though the case could be termed a close one, the board’s decision finds adequate support in the evidence. It is at once apparent that September 9, 1973 might be found to represent a line of demarcation in a pattern of events starting with the day of the claimant’s injury and ending with that of her discharge. A letter concededly sent by Ms. Axel’s lawyer to Duffy-Mott on that date could well have served to bring home the fact that his client was intent on pursuing her compensation remedy. It was no mere coincidence, says the claimant, that the receipt of this letter marked the end of a long period, starting with the time she had first come to work for Duffy-Mott, during which memoranda written by her supervisors consistently described her abilities in glowing terms and regularly recommended that she receive substantial salary increases. It is significant in tying Duffy-Mott’s change of attitude to the receipt of the letter, continues the claimant, that, before it arrived, she received yet another increase months after the accident despite the intervention of her injury-enforced absence and a somewhat handicapped work performance upon her return.
Be that as it may, whatever inferences might be drawn from the events of the preletter period if they stood alone, they become far more pronounced by reason of the sharply contrasting second part of the before and after picture that emerges from the record that follows the lawyer’s communication. Then only does Ms. Axel’s personnel file begin to contain adverse references to her attendance record, her use of an office phone to make personal calls during working hours and her alleged failure to complete assigned work promptly. Particularly odd in light of the excellence of her antecedent ratings is a directive that claimant’s supervisors document all discussions with her on these matters. While reasonable men most certainly could differ as to the inferences to be drawn from this train of events, we cannot say that it does not admit of ones consistent with the board’s apparent conclusion that Duffy-Mott was attempting to build a case against Ms. Axel so that it would have an excuse to discharge her (see, generally, *8 Spurlock, Proscribing Retaliation Under Title VII, 8 Ind L Rev 453, 476-489).
A sharp question of fact also arose over whether claimant’s supervisors ever actually brought the performance deficiencies mentioned in her file to her attention. Ms. Axel flatly denied these subjects were ever broached, and the evaluation of her credibility obviously was for the board (Matter of Slade v Perkins, 33 NY2d 988; Matter of Gordon v New York Life Ins. Co., 300 NY 652, 654; 3 Larson, Workmen’s Compensation Law, § 80.20).
True, the employer did demonstrate the existence of factors that could have had a deleterious effect on claimant’s ability and desire to do her work properly. The severity of Ms. Axel’s compensation injury itself — it included a 75% loss of use of her right shoulder which, in terms of its over-all effect, resulted in a worker’s compensation finding that she had lost 30% of the use of her right arm — is one such factor. By an unfortunate coincidence, as the record shows, claimant, an only child, also lost her mother in the fall of 1973 and thereafter, additionally, had to assume the burden of coping with her father’s psychotic reaction to the death of his wife. These certainly could have affected her job performance. But that was not the whole question. Rather, it was whether, but for the animus which the claimant insists the pressing of her compensation claim induced, this hitherto exemplary and loyal employee would have been dismissed. And the answer to that question could rightfully take into account not only the first-rate employment history that preceded Ms. Axel’s misfortunes, but their objective and unfeigned character and the appropriateness of her reaction to them.
Moreover, in the employer’s accusation that she changed her hair style and dress following her mother’s death, it was permissible for the board to find confirmation of the charge that Duffy-Mott was searching for a pretextual ground for letting Ms. Axel go. Since claimant spent her work time with a computer and her fellow employees and not with clients of the firm, Duffy-Mott had little basis, if any, on which to argue that her appearance had a direct adverse effect on its business. Just creating such an issue could demonstrate a remarkable insensitivity to Ms. Axel’s need for a change of pace that might brighten her life and help her rise above the understandably depressing nature of her misfortunes. In any event, it. is hard to quarrel with the board’s conclusion that the *9 employer’s attitude in this regard was more characteristic of one seeking an excuse than of one justifiably upset over an employee’s poor performance.
Finally, the circumstances immediately preceding the time of claimant’s discharge were a most crucial factor in evaluating its propriety. In this connection, there are a number of indications of the mounting tension with which the employer approached the time of the compensation hearing scheduled for January 23, 1976. Some days before the hearing, when several of Ms. Axel’s coworkers received subpoenas to testify, her supervisor made sure that their displeasure was reflected in a memorandum to claimant’s file. And, practically on the eve of the hearing, Ms. Axel found herself arguing with a supervisor when she was criticized because her prospective absence on the day she was scheduled to appear before the board would delay the completion of one of her work assignments. It was this "dispute” that was later to be cited by the employer as a nonretaliatory reason for her severance.
Moreover, these events could almost be said to have been presaged by an even more ominous one that faced Ms. Axel at the beginning of that month. In December of 1973, she had been given a leave of absence, inclusive of some days of earned vacation, presumably to afford her time to recover from her problems. However, when she returned to work in January, she was greeted with an announcement that she had been reduced to the status of one on a probationary "trial period”. Add to this the fact that claimant’s notice of termination that same month followed on the heels of her compensation testimony by only two days, and it is impossible to say that the board could not find in this course of conduct meaningful support for an inference that the employer’s motive for dismissing Ms. Axel was retaliatory.
Furthermore, once the employee had introduced evidence of retaliation, the board could have treated the burden of proving that the termination was for a legitimate reason independent of a retaliatory or other impermissible motive as having shifted to the employer (cf. Matter of Maloff v City Comm. on Human Rights [Anilyan], 46 NY2d 908; Matter of Pace Coll. v Commission on Human Rights of City of N. Y., 38 NY2d 28, 40).
It is noteworthy, therefore, that Duffy-Mott offered no evidence of its treatment of other employees who were tardy, who made personal telephone calls during business hours or *10 whose performance was called into question on the other grounds raised against Ms. Axel. No documentation of established company policies or rules on any of these subjects was proffered, and no showing was made that claimant’s conduct on this score differed after her lawyer’s letter was introduced into the scene as against what it had been earlier. Any proof that the employer’s diarying of relatively commonplace conversations with Ms. Axel was consistent or inconsistent with its practice with other employees was also conspicuous by its absence (see Spurlock, Proscribing Retaliation Under Title VII, 8 Ind L Rev 453, 476-477).
In sum, allowing for the elusiveness of proof of discriminatory intent, the inferences to be drawn from the evidence submitted in this case formed an adequate foundation for the board’s finding that Duffy-Mott’s severance of Ms. Axel was a violation of section 120 in that it was in retaliation for her pursuit of the compensation claim (see, generally, 300 Gramatan Ave. Assoc. v State Div. of Human Rights, 45 NY2d 176; Bethlehem Steel Corp. v New York State Div. of Human Rights, 36 AD2d 898).
Before closing, however, we add a caveat. The board, in delineating the rationale for its decision, commented on the fact that Duffy-Mott had "vigorously” opposed Ms. Axel’s compensation and unemployment insurance claims. As to that, we take this occasion to observe that, absent unusual circumstances, no adverse inferences may be drawn from such conduct per se. The employer, too, has a right to present its position to the board and should not be penalized for doing so (cf. Horovitz, Injury and Death Under Workmen’s Compensation Laws, p 387 [discussing due process rights of employers]). This is certainly no less true where, as here, the employer is not self-insured and turns over the conduct of the case to its carrier. Nevertheless, inasmuch as the record contains sufficient acceptable evidence to more than meet the substantiability standard, we are convinced that this concern of the board did not affect its ultimate determination.
For all these reasons, the order of the Appellate Division should be reversed, with costs, and the decision of the Workers’ Compensation Board reinstated.
Chief Judge Cooke and Judges Jasen, Gabrielli, Jones and Wachtler concur with Judge Fuchsberg.
Order reversed, etc.
*11 APPENDIX
WORKERS’ COMPENSATION LAW
§ 120. Discrimination against employees who bring proceedings
It shall be unlawful for any employer or his duly authorized agent to discharge or in any other manner discriminate against an employee as to his employment because such employee has claimed or attempted to claim compensation from such employer, or because he has testified or is about to testify in a proceeding under this chapter. Any employer who violates this section shall be liable to a penalty of not less than one hundred dollars or more than five hundred dollars, as may be determined by the board. All such penalties shall be paid into the state treasury and be applicable to the expenses of administering this chapter. Such penalty shall be collected in like manner as an award of compensation. Any employee so discriminated against shall be restored to his employment and shall be compensated by his employer for any loss of wages arising out of such discrimination: provided, that if such employee shall cease to be qualified to perform the duties of his employment, he shall not be entitled to such restoration and compensation. The employer alone and not his carrier shall be liable for such penalties and payments. Any provision in an insurance policy undertaking to relieve the employer from the liability for such penalties and payments shall be void.

. The full text of section 120 (L 1973, ch 235, § 1) is appended at the foot of this opinion.

. There is a growing universality of legislative concern for combating coercion of the kind here alleged both within our State (e.g., Executive Law, § 296, subd 1, par [e]; Administrative Code of City of New York, § Bl-7.0, subd 7), and without (e.g., Civil Rights Act of 1964, tit VII, § 704, subd [a], US Code, tit 42, § 2000e-3, subd [a]; 111 Ann Stat, ch 48, § 853, subd [d]; Minn Stat Ann, § 363.03, subd 7, par [1]; Pa Stat Ann, tit 43, § 955, subd [d]).