**Jerome SANDBERG, Plaintiff–Appellant,**

v.

**KPMG PEAT MARWICK, LLP, Defendant–Appellee.**

**Nos. 96–9099, 1180.**

United States Court of Appeals, Second Circuit.

Argued March 5, 1997.

Decided April 17, 1997.

---

Donald E. Creadore, Kupferman & Creadore, New York City, for Plaintiff–Appellant.

Dennis H. Tracey, III and John Houston Pope, Davis, Scott, Weber & Edwards, New York City, for Defendant–Appellee.

Before WALKER, McLAUGHLIN, and WOOD,* Circuit Judges.

McLAUGHLIN, Circuit Judge:

Plaintiff appeals from an order entered May 16, 1996 in the United States District Court for the Southern District of New York (Rakoff, *J.*) granting defendant's motion to dismiss plaintiff's claim as time-barred. We review de novo the grant of the dismissal

motion. *Eagleston v. Guido,* 41 F.3d 865, 870 (2d Cir.1994).

## BACKGROUND

Plaintiff Jerome Sandberg was an accountant in the offices of defendant KPMG Peat Marwick, L.L.P. in New York, New York from December 1987 to August 1992, when he was fired. Although his last day of work at Peat Marwick was apparently August 28, 1992, he remained on the payroll until October 1992.

Sandberg was a qualified participant in Peat Marwick's employee benefits plan (the "Plan"). As such he would become fully vested in the Plan after five years of service. He was on the payroll of Peat Marwick for approximately four years and ten months. In response to Sandberg's inquiries after he was fired, Peat Marwick told him several times in the spring of 1993, and for the last time in August 1993, that he was not entitled to benefits under the Plan because he had not worked for the full five-year period.

In October 1995 Sandberg sued, alleging that Peat Marwick fired him to prevent him from becoming fully vested in the Plan, in violation of section 510 of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1140 (1985), and breached its employment contract with Sandberg. Peat Marwick moved to dismiss or, in the alternative, for summary judgment. Peat Marwick argued that Sandberg's claim under section 510 of ERISA was barred by a statute of limitations of either two or three years, and that ERISA preempted Sandberg's state-law breach of contract claim.

The district court concluded that the applicable period of limitations for Sandberg's ERISA claim was two years, the period borrowed from the most analogous state-law claim, section 120 of the New York Workers' Compensation Law. N.Y. Work. Comp. Law § 120 (McKinney 1994). Accordingly, the court granted the motion to dismiss Sandberg's section 510 claim, observing that the limitations period had expired, regardless of

---

* The Honorable Harlington Wood Jr., of the United States Court of Appeals for the Seventh Circuit, sitting by designation.

whether his claim accrued on August 28, 1992 (Sandberg's last day of work) or in August 1993 (when Sandberg was last informed that he was not going to get benefits under the Plan). The court also dismissed Sandberg's breach of contract claim, finding that it was preempted by ERISA. Having abandoned the state-law claim, Sandberg now appeals only the district court's dismissal of his ERISA section 510 claim.

## DISCUSSION

Section 510 of ERISA makes it unlawful for an employer

> to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan ... or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan....

29 U.S.C. § 1140.

Section 510 may be enforced by an action under section 502(a)(3), to protect employees from actions designed to prevent the vesting of pension rights. *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 142–44, 111 S.Ct. 478, 484–86, 112 L.Ed.2d 474 (1990); *Dister v. Continental Group, Inc.,* 859 F.2d 1108, 1111 (2d Cir.1988). Section 502(a)(3) authorizes an individual to institute a civil action "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3). Congress has neglected, however, to establish a statute of limitations for this enforcement section of ERISA.

■ When Congress fails to provide a statute of limitations for claims arising under federal statutes, a court must apply the limitations period of the state-law cause of action most analogous to the federal claim. *North Star Steel Co. v. Thomas,* — U.S. —, —, 115 S.Ct. 1927, 1930, 132 L.Ed.2d 27 (1995); *Wilson v. Garcia,* 471 U.S. 261, 267–68, 105 S.Ct. 1938, 1942–43, 85 L.Ed.2d 254 (1985). This requires the court to "characterize the essence" of plaintiff's federal claim. *Wilson,* 471 U.S. at 267–70, 105 S.Ct. at 1942. New York is the forum state, and the parties agree that New York law applies. *See Ceres Partners v. GEL Assocs.,* 918 F.2d 349, 353 (2d Cir.1990) (analogous state statute of limitations should be adopted by reference to the pertinent laws of the forum state); *Arneil v. Ramsey,* 550 F.2d 774, 779 (2d Cir.1977) (same).

■ Sandberg argued below that his claim was most analogous to section 214(2) of the New York Civil Practice Law and Rules ("CPLR"), which applies a three-year period to actions brought under New York's anti-discrimination law, *see, e.g.,* N.Y. Exec. Law § 296 (age discrimination section); *Murphy v. American Home Prods. Corp.,* 58 N.Y.2d 293, 461 N.Y.S.2d 232, 448 N.E.2d 86, 92–93 (1983). He further argues on appeal that his claim is analogous to a breach of contract, governed by the six-year period of CPLR 213(2). Peat Marwick counters that, as the district court concluded, Sandberg's claim is most analogous to section 120 of the New York Workers' Compensation Law, the statute governing actions to redress wrongful termination in connection with the collection of workers' compensation benefits.

This Court has not considered which New York cause of action is most analogous to a section 510 ERISA claim, and two district courts in New York reached different conclusions. *Compare DeSimone v. Transprint USA, Inc.,* No. 94 Civ. 3130(JFK), 1996 WL 209951, at *6 (S.D.N.Y. April 29, 1996) (applying the six-year limitations period for contract claims) *with Barnett v. IBM,* 885 F.Supp. 581, 592 (S.D.N.Y.1995) (applying section 120 of New York Workers' Compensation Law). The *DeSimone* court, however, clearly conflated a claim under section 502(a)(1)(B) of ERISA, which applies where an employee is in fact entitled to benefits and has not received them, and a claim under section 502(a)(3), which applies where an employee has been fired to prevent the vesting or enjoyment of pension rights. *See Teumer v. General Motors Corp.,* 34 F.3d 542, 544–46 (7th Cir.1994); *McClure v. Zoecon,* 936 F.2d 777, 779 n. 3 (5th Cir.1991).

The circuit courts have reached disparate conclusions. *See Teumer*, 34 F.3d at 547 (citing cases). As the Seventh Circuit recently pointed out in *Teumer*, "[w]hat may be contributing toward this lack of consensus in the grafting of limitations periods for actions on § 510 rights is the variant nature of the several rights recognized in that one provision." *Id.* Section 510 protects against (1) the disruption of employment privileges to prevent the vesting or enjoyment of benefit rights; (2) the disruption of employment privileges to punish the exercise of benefit rights; and (3) the disruption of employment privileges to prevent or punish the giving of testimony in any proceeding relating to ERISA or a sister act. *Id.* This Court has explained that "[s]ection 510 was designed primarily to prevent 'unscrupulous employers from discharging or harassing employees in order to keep them from obtaining vested pension rights.'" *Dister*, 859 F.2d at 1111 (quoting *West v. Butler*, 621 F.2d 240, 245 (6th Cir.1980)). Sandberg too emphasized this as the primary purpose of the statute, claiming that he was fired to prevent the vesting of his pension rights.

The circuits courts that have considered claims similar to Sandberg's—that is, claims that an employer aborted the vesting or enjoyment of benefits—have almost unanimously concluded that the most analogous state-law cause of action under section 510 is "wrongful termination" or "retaliatory discharge," catch-all descriptions of state-law causes of action encompassing an employee's claim that he was discharged in violation of public policy. *See Teumer*, 34 F.3d at 549–50 (retaliatory discharge encompassing interference "with the exercise of favored rights."); *Hinton v. Pacific Enters.*, 5 F.3d 391, 394 (9th Cir.1993) (wrongful termination in contravention of a public policy grounded in either a constitutional or statutory provision); *Byrd v. MacPapers, Inc.*, 961 F.2d 157, 159 (11th Cir.1992) (discharge in retaliation for filing workers' compensation claim); *Felton*, 940 F.2d at 510–13 (wrongful termination in violation of public policy, such as discharge "for exercising a legal right."); *McClure*, 936 F.2d at 778–79 (wrongful discharge and employment discrimination). *But see Gavalik v. Continental Can Co.*, 812 F.2d 834, 846–47 (3d Cir.1987) (race-based employment discrimination).

Sandberg, however, points to *Held v. Manufacturers Hanover Leasing Corp.*, 912 F.2d 1197 (10th Cir.1990), where the Tenth Circuit, looking to New York law because of New York's "significant relationship" to plaintiff's claims, concluded that plaintiff's claim that his employer fired him to prevent the vesting of his pension rights is most analogous to a claim for employment discrimination. *Id.* at 1205. The events giving rise to the action in *Held*, however, pre-dated the enactment of the limitations period of section 120 of the New York Workers' Compensation Law, and thus the court did not consider the applicability of that statute. *Barnett*, 885 F.Supp. at 593.

In light of the different claims that may be brought under section 510, the fundamental question arises whether a court should parse the various grievances that may be alleged under section 510, assigning to each a distinct statute of limitations, or rather select the most analogous cause of action and apply a single, uniform period to all section 510 claims. *See Teumer*, 34 F.3d at 549. We agree with the *Teumer* court that the latter course is preferable, if only in the interest of simplicity.

Addressing a similar question in the context of 42 U.S.C. § 1983, the Supreme Court in *Wilson v. Garcia* concluded that "[t]he federal interests in uniformity, certainty, and the minimization of unnecessary litigation all support the conclusion that Congress favored this simple approach." 471 U.S. at 275, 105 S.Ct. at 1947. In so concluding, the Court acknowledged that the selection of a distinct limitations period for every claim under § 1983 was a time-consuming and, to some extent, arbitrary activity. *Id.* at 272–74 & n. 25, 105 S.Ct. at 1944–46 & n. 25. The distinction between the wrongs contemplated by section 510 is by no means easily perceived. The *Teumer* court, for example, surmised that "retaliation and interference are, in practical effect, inseparable theories," concluding that "it seems fruitless to try to distinguish anger with the employee's past exercise of his benefit rights from a desire to

forestall the future enjoyment of those same benefits." 34 F.3d at 549. In the same vein, New York's highest court has stressed that

> employers who practice retaliation may be expected to seek to avoid detection, and it is hardly to be supposed that they will not try to accomplish their aims by subtle rather than obvious methods.... [T]he visible manifestation of even a most improperly motivated discharge may be difficult to sort out from a nonretaliatory exercise of this discretion.

*Axel v. Duffy–Mott Co.,* 47 N.Y.2d 1, 416 N.Y.S.2d 554, 389 N.E.2d 1075, 1077 (1979). We conclude, therefore, that a single statute of limitations should govern all ERISA claims under section 510.

The remaining question, then, is what that period should be. Sandberg maintains that his cause of action is comparable to a claim of anticipatory breach of contract or the good faith and fair dealing doctrines of contract law and, therefore, the six-year period of CPLR 213(2) should apply. The court in *Teumer* considered and rejected this same argument, reasoning that "the interference prong of the retaliatory discharge *tort* quite clearly bears a closer family resemblance to the § 510 right, as it deals generally with favored areas of public policy and frequently with economic/employment concerns—like workers' compensation—as opposed to the wholly general coverage of *contract* law." *Id.* at 549 (emphasis added). We agree. These causes of action prevent employers from punishing employees for exercising rights or benefitting from rights so favored by public policy as to be placed outside the range of considerations on which an employer may base its at-will employment decisions. *Id.* at 547.

Sandberg also attempts to analogize his claim to one for racial or age discrimination. The Supreme Court has noted a crucial distinction between claims for age discrimination and ERISA claims under section 510: age discrimination rests on "an inaccurate and denigrating generalization about age," whereas the termination of an employee who is upon the verge of vesting represents an "*accurate* judgment about the employee—that he indeed is 'close to vesting.'" *Hazen*

*Paper Co. v. Biggins,* 507 U.S. 604, 612, 113 S.Ct. 1701, 1707, 123 L.Ed.2d 338 (1993). The fundamental concern of discrimination law is to redress the dignitary affront that decisions based on group characteristics represent, not to guarantee specific economic expectancies. *Teumer,* 34 F.3d at 548 n. 3.

The distinction between a section 510 claim and a claim for discrimination is further reflected in the different remedies available under each theory. Damages for emotional distress are available in a racial discrimination suit, for example, *see Tyler v. Bethlehem Steel Corp.,* 958 F.2d 1176, 1190 (2d Cir. 1992), while monetary damages are generally prohibited in ERISA suits, *see Mertens v. Hewitt Assocs.,* 508 U.S. 248, 253–54, 113 S.Ct. 2063, 2066–67, 124 L.Ed.2d 161 (1993); *Lee v. Burkhart,* 991 F.2d 1004, 1011 (2d Cir.1993).

The one remaining question is which "retaliatory discharge" or "wrongful termination" cause of action under New York law is the most analogous. New York, however, does not recognize a cause of action for "wrongful discharge." *Murphy,* 461 N.Y.S.2d 232, 448 N.E.2d at 89–90. The New York Workers' Compensation statute is therefore the closest analogy for the various claims that may be asserted under section 510. *See Byrd,* 961 F.2d at 159–60 (applying Florida workers' compensation law as most analogous state-law cause of action for section 510 claim); *see also Barnett,* 885 F.Supp. at 592–93. Section 120 provides, in relevant part:

> It shall be unlawful for any employee or his or her duly authorized agent to discharge or in any other manner discriminate against an employee as to his or her employment because such employee has claimed or attempted to claim compensation from such employer, or because he or she has testified or is about to testify in a proceeding under this chapter and no other valid reason is shown to exist for such action by the employer.

> Any complaint alleging such an unlawful discriminatory practice must be filed within two years of the commission of such practice...

N.Y. Work. Comp. Law § 120 (McKinney 1994).

The injunction against the employer with regard to such discriminatory motive is the "critical language" of the statute. *Duncan v. New York State Developmental Ctr.*, 63 N.Y.2d 128, 481 N.Y.S.2d 22, 470 N.E.2d 820, 822 (1984). The statute thus protects against employer actions that would prevent obtaining benefits (employees who attempt to claim compensation), employer actions to punish those who seek benefits (employees who claim compensation) and employer actions directed against whistle-blowers. The parallel to section 510 actions is obvious. The protection for employees who seek to obtain their workers' compensation entitlements falls within a class of economic rights and privileges that provide for the special needs of employees in the modern workplace. *Teumer*, 34 F.3d at 549. As is evident under section 510, a "causal nexus" between the employee's imminent exercise of these workers' compensation rights and the basis for the employer's treatment of the employee is the basis for liability. *Duncan*, 481 N.Y.S.2d 22, 470 N.E.2d at 822–23.

The remedies sought by plaintiffs under section 120 of the New York Workers' Compensation statute, moreover, are identical to those available under ERISA: back pay, restitution and reinstatement. *See* N.Y. Work. Comp. Law § 120 ("Any employee so discriminated against shall be restored to employment . . . and shall be compensated by his or her employer for any loss of compensation arising out of such discrimination. . . ."); *Axel*, 416 N.Y.S.2d 554, 389 N.E.2d at 1076 (applying section 120); *Russell v. Northrop Grumman Corp.*, 921 F.Supp. 143, 150–53 (E.D.N.Y.1996) (identifying back pay and restitution as appropriate equitable remedies under section 502(a)(3)). This congruence of available remedies is further evidence of the compelling analogy between section 120 of the Workers' Compensation statute and section 510 of ERISA. *See Hinton*, 5 F.3d at 394 (citing *Felton*, 940 F.2d at 512). Thus, as the district court held, the two-year statute of limitations under section 120 of the New York Workers' Compensation statute bars Sandberg's claim

under section 510 of ERISA, using any of the accrual dates that Sandberg suggests.

In conjunction with his argument that the six-year limitations period is the most analogous, Sandberg apparently invokes a narrow exception to the general rule that a court is to borrow the limitations period of the most analogous state cause of action. The exception applies "when a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes, and when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking." *Reed v. United Transp. Union*, 488 U.S. 319, 324, 109 S.Ct. 621, 625, 102 L.Ed.2d 665 (1989) (quotations omitted).

Sandberg suggests an analogy to a claim under the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 186 (1985), and section 8(a)(3) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 158(a)(3) (1985). We reject this argument. The Supreme Court emphasized in *Reed* that application of state limitations periods remains the norm, and that the Court will continue to assume "that Congress intends by its silence that [federal courts] borrow state law." *Id.* (citations and quotation marks omitted). Thus, "state statutes of limitations are to be used unless they frustrate or significantly interfere with federal policies." *Id.* at 327, 109 S.Ct. at 627.

Sandberg's invocation of the LMRA and NLRA is unavailing. The comparison between these federal statutes and section 510 has also been rejected by the only other court to consider it. *See Gavalik*, 812 F.2d at 847–48. Further, we do not discern an inadequacy of the possible limitations periods under New York law or any other appropriate federal analogue. *See Teumer*, 34 F.3d at 546 n. 1; *Byrd*, 961 F.2d at 159 n. 1; *McClure*, 936 F.2d at 778 n. 2. The available state-law limitations periods satisfy the federal government's interest in ensuring that an employer fulfill its obligation under ERISA. *See, e.g., Felton*, 940 F.2d at 510 n. 11.

Finally, Sandberg argues (for the first time on appeal) that the district court erred in not considering whether he was a "de

facto" vested member of the Plan by virtue of his allegedly having provided professional advice and services to Peat Marwick through the spring of 1993. Sandberg's complaint alleges a claim only under section 502(a)(3) of ERISA, not section 502(a)(1)(B). *See* Complaint ¶ 13. As explained above, only the latter provision would encompass a claim based on his having already vested in the Plan. In any event, Sandberg did not present this argument to the district court. He cannot now blandly recharacterize his claim in order to secure a different statute of limitations. *See Teumer,* 34 F.3d at 545–47; *see also Held,* 912 F.2d at 1207 n. 1 (Ebel, J., concurring in part and dissenting in part).

Sandberg also asks this court to issue an order precluding Peat Marwick from seeking attorney's fees in this action. Such an order would be premature, as the district court has not ordered Sandberg to pay any such fees.

## CONCLUSION

The district court applied the appropriate statute of limitations to Sandberg's claim. Accordingly, the order of the district court is affirmed.