**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 8 2002**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

REBECCA L. MYERS,

      Plaintiff-Appellant,

v.

COLGATE-PALMOLIVE COMPANY,

      Defendant-Appellee.

No. 00-3174
(D.C. No. 96-CV-4095)
(District of Kansas)

**ORDER AND JUDGMENT**[*]

Before **EBEL** and **PORFILIO**, Circuit Judges; and **SHADUR**, District Judge.[**]

Rebecca L. Myers appeals the district court's granting summary judgment to her

employer, Colgate-Palmolive Company, on her claim she was terminated on account of

her age and sex in violation of the Age Discrimination in Employment Act of 1967, 29

U.S.C.A. §§ 621-34 (ADEA), and Title VII, 42 U.S.C. § 2000e-16(c), respectively;

dismissing under Fed. R. Civ. P. 12(b)(6) her separate claim Colgate violated rights

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. This court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

[**] Honorable Milton I. Shadur, United States District Judge for the Northern
District of Illinois, sitting by designation.

protected by the Employee Retirement Income Security Act of 1974, § 510, 29 U.S.C. § 1140 (ERISA); and levying a $1,000 sanction for failure to comply with the requirements of Fed. R. Civ. P. 37(a)(2)(B). *Myers v. Colgate-Palmolive Co.*, 102 F. Supp. 2d 1208 (D. Kan. 2000). Finding no error, we affirm.

Indulged in her favor, the inexorable facts trap Ms. Myers in a plant restructuring which eliminated the position she held after working for Colgate for twenty-one years, first as an associate chemist in the Kansas City, Kansas plant (the Plant) and ultimately as a supervisor of line inspectors and chemists.[1] In the latter five years of her employment, Colgate undertook a restructuring of the Plant to address efficiency problems and budget shortfalls. Robert Dietz, the Plant manager of manufacturing, oversaw the restructuring. After comparing the Kansas City operation to those of other Colgate plants, Mr. Dietz and Colgate management adopted a process aimed at concentrating on the position, not the people; that is, ignoring an employee's tenure, rank, or performance in deciding whether any particular job was needed or could be incorporated into another position. To accomplish that goal, Mr. Dietz rejected permitting more senior employees whose positions were vaporized or integrated into an existing job from "bumping" less senior workers although a qualified employee whose job was eliminated could be placed in a

---

[1]During her tenure at the Plant, Ms. Myers was promoted at least twice to the positions of plant chemist in the quality assurance department (QA) where she supervised the senior chemist, associate chemists, and line inspectors. Colgate then transferred her to a secretarial position when she became pregnant in 1978, but she continued to earn the same salary. After her maternity leave, Ms. Myers became the chief inspector in QA.

vacant position.  Mr. Dietz  looked at qualifications only when more than one person held a single type of position that was to be eliminated.  Mr. Dietz and Barbara Heim, the manager of human resources, had complete discretion over where and how to cut costs.  This restructuring occurred in the summers of 1994 and 1995.  Consequently, in 1994, Mr. Dietz eliminated Ms. Myers' supervisory position in QA and offered her a job as a reliability engineer at the same salary and grade level.  He transferred James Schulz,[2] a QA colleague, to another department and eliminated three QA positions.  In 1995, Mr. Dietz eliminated both of their positions.[3]

On March 24, 1996, Ms. Myers sued Colgate, claiming she was terminated because of her sex and age and in retaliation for her complaints she was treated differently from younger male employees.  On March 31, 1997, Ms. Myers' counsel filed a motion to compel Colgate to answer interrogatories and comply with document production, accompanied by a memorandum and certificate of compliance.  The certificate of compliance recited that "Plaintiff has conferred with defense counsel by telephone several times prior to and since the receipt of defendant's responses and finally in person on March 25, 1997," each time with defendant's refusal to voluntarily provide additional discovery.  Colgate challenged these assertions, and after a hearing in which Ms. Myers' counsel was rigorously questioned about the representations in the certificate of

---

[2]At that time, Ms. Myers was over 40 years old, and Mr. Schulz was in his 30's.

[3]In 1994, 12 employees worked in the QA department.  By 1996, that number had been reduced to 7.

compliance,[4] the Magistrate Judge ordered counsel to produce "whatever you've got" to validate his representations. Instead, counsel moved to withdraw the certificate of compliance and for a continuance. On April 24, 1997, the Magistrate Judge overruled plaintiff's motion to compel and for an extension because of counsel's failure to comply with Fed. R. Civ. P. 37(a)(2)(B) and D. Kan. Rule 37.2. In addition, the Magistrate Judge found because plaintiff counsel's conduct was so outrageous, sanctions were warranted under the federal and local rules cited and the Model Rules of Professional Conduct Rule 3.3 and ordered counsel to show cause why sanctions should not be imposed.

On May 30, 1997, Colgate moved for summary judgment testing Ms. Myers' allegations its restructuring or reduction in force (RIF) was a pretext for terminating her while retaining or placing a younger, male employee in a similar position. On June 20, 1997, Ms. Myers filed a separate complaint alleging the termination deprived her of retirement and pension benefits under § 510 of ERISA. Colgate moved to dismiss the complaint on the grounds the second complaint impermissibly split claims derived from the same core of operative facts, and alternatively, was not filed within the applicable statute of limitations.

---

[4]The Magistrate Judge asked, "Do you think that I don't read these certificates? And why would you be so careless as to say, in a certificate, a statement, which I think is fairly significant, that you talked several times prior and since receipt of these responses and finally in person on March 25th? . . . Well, you not only had the wrong day, you had the wrong facts."

Consolidating the three issues in a written order, the court addressed Colgate's motion for summary judgment on Ms. Myers' discrimination claims,[5] plaintiff's objection to the Magistrate Judge's order imposing sanctions under Fed. R. Civ. P. 37, and Colgate's motion to dismiss the second complaint under ERISA. First, the court held Ms. Myers failed to make a prima facie case either for age or sex discrimination, crediting Colgate's uniformly applied process, especially the prohibition against bumping, to explain how certain individuals remained in their jobs despite Ms. Myers' evidence of her long tenure, superior qualifications, and experience. *Id.* at 1216.

Nonetheless, the court examined Colgate's "legitimate, non-discriminatory reason" for Ms. Myers' termination, which it viewed as fully clothed in the RIF, an indisputable fact at the time of the employment action which Ms. Myers' evidence did not overcome. *Id.* Given the objectives of the RIF, the court found that "some of [Ms. Myers'] former responsibilities as reliability engineer were eliminated, others were divided up and absorbed by several persons who were then current employees at the Plant, and yet others were performed by employees in other Colgate plants." *Id.* Citing **Beaird v. Seagate Technology, Inc.**, 145 F.3d 1159, 1168 (10th Cir. 1998), the court found none of Ms. Myers' allegations or evidence undermined the RIF explanation. Instead, Ms. Myers' allegations relied on an alternative business plan which would preserve her position and

---

[5]Ms. Myers did not object to or appeal the Magistrate Judge's dismissal of her claim for retaliation. Although she referred to the claim in her appellate brief, her counsel stated in oral argument that she appealed only the sex and age discrimination issue.

force the district court to second-guess Colgate's business judgment. Although Ms. Myers offered examples of two other employees as well as statistical evidence to show the alleged disproportionate impact on older employees and women, the court rejected the evidence after careful examination.[6]

Next, the court addressed the sanctions levied because plaintiff filed a certificate of compliance under Fed. R. Civ. P. 37(a)(2)(B)[7] which was "either wilfully false or

---

[6]For example, the court stated, Ms. Myers could not show any new hires in QA. It found that Jacqueline Miller and Dennis Fletcher, Colgate employees Ms. Myers highlighted to undercut the RIF explanation, were not in analogous situations. The court cited Colgate's evidence that Ms. Miller was fired because of her performance and received the restructuring letter so that she was eligible for certain benefits upon her termination. Ms. Miller worked in a different department from Ms. Myers and was fired 6 weeks after Ms. Myers. The court rejected Ms. Myers' statistical evidence stating it did not "compare similarly situated individuals, and takes into account persons terminated by decision-makers other than the one who made the decision to terminate Myers," *Myers v. Colgate*, 102 F. Supp. 2d 1208, 1218 (D. Kan. 2000), and included all employees without grouping for skills or specialities or indicating employees who might have taken early leave or other retirement or benefit packages. Finally, the court found a newspaper ad which Ms. Myers alleged Colgate placed for Ms. Miller's position was instead a general ad with a box number and no mention of Colgate as the employer. Ms. Myers provided no other details to undermine this finding.

[7]That section provides:

> (B) If a deponent fails to answer a question propounded or submitted under Rules 30 or 31, or a corporation or other entity fails to make a designation under Rule 30(b)(6) or 31(a), or a party fails to answer an interrogatory submitted under Rule 33, or if a party, in response to a request for inspection submitted under Rule 34, fails to respond that inspection will be permitted as requested or fails to permit inspection as requested, the discovering party may move for an order compelling an answer, or a designation, or an order compelling inspection in accordance with the request. The motion must include a certification that the movant has in good

(continued...)

recklessly made without regard to its truthfulness," as characterized by the Magistrate Judge. *Myers*, 102 F. Supp. 2d at 1220. Positing review under a clearly erroneous or contrary to the law standard, 28 U.S.C. § 636(b)(1)(A),[8] the district court articulated the issue was not whether plaintiff reasonably attempted to confer in good faith about the discovery requests but "whether the magistrate's determination that plaintiff's counsel made affirmative misrepresentations to him about those efforts to confer, is clearly erroneous." *Id.* at 1221.

The district court set out each of the inconsistencies separating plaintiff counsel's representations from the Magistrate Judge's findings. Discarding plaintiff counsel's recasting the oversight as a "minute technicality" and "trap" to place the inquiry instead under Rule 11, the court explained Rule 37 was aimed at deterring discovery abuses, reducing litigant expenses, and eliminating unnecessary court involvement with discovery motions; thus, Rule 37 exacted a "substantial professional obligation" which plaintiff

---

[7](...continued)
faith conferred or attempted to confer with the person or party failing to make the discovery in an effort to secure the information or material without court action. When taking a deposition on oral examination, the proponent of the question may complete or adjourn the examination before applying for an order.

[8]28 U.S.C. § 636(b)(1)(A) states in part:

A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate's order is clearly erroneous or contrary to law.

counsel had utterly failed to meet. After considering Colgate's evidence of the expenses it incurred and plaintiff's objections, the court awarded the sanction, later set at the sum of $1,000.

Finally, the court addressed Colgate's objections to Ms. Myers' § 510 ERISA claim. Despite Ms. Myers' effort to distinguish the roots of the ERISA action, the court found it arose "out of the same transactional nucleus of facts, and would involve substantially the same evidence." *Myers*, 102 F. Supp. 2d at 1223. Thus, while Ms. Myers could have amended her complaint to add the ERISA claim, the court stated it would not allow her later to split the claim. *Id.*

In the alternative, the court held the ERISA claim was barred by Kansas' two-year statute of limitations, the most analogous limitary period for employment discrimination cases. *Delaware State College v. Ricks*, 449 U.S. 250, 260 (1980). Thus, the court found, Ms. Myers received notice of her termination on June 15, 1995, to become effective June 22, 1995, the date her cause of action accrued. *Myers*, 102 F. Supp. 2d at 1224. Consequently, the ERISA complaint, filed on June 20, 1997, was five days out of time.

Ms. Myers appeals these dispositions. We have combed the record and studied our precedent to analyze the issues raised. Our plenary review, however, uncovers no basis for any of her contentions.

First, within the *McDonnell Douglas* framework, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), Ms. Myers seeks to meet her threshold burden her termination

was based on age and sex discrimination by pointing to the "culture of discrimination" tolerated at Colgate;[9] by emphasizing her twenty-one years of exemplary employment at Colgate; and by offering statistical proof of the elimination of women and older employees to subvert Colgate's alleged business judgment. Instead of fact, however, she offers argument, reiterating that she was the most senior female employee in management, which she presents as the factual basis to overcome the restructuring of her position. Although Ms. Myers' criteria of retention, experience, performance, and tenure, are reasonable, they are not those chosen by Colgate which "may choose to conduct its RIF according to its preferred criteria of performance . . . and we will not disturb that exercise of defendant's business judgment." *Beaird*, 145 F.3d at 1169 (citation omitted).

*Beaird* offers three approaches to demonstrate pretext when an employer relies on a RIF. First, plaintiff can offer evidence her termination is inconsistent with the RIF criteria; second, the employer "deliberately falsified or manipulated" her evaluations to cause her termination or "adversely alter her employment status"; or, third, attempt to show "the RIF is more generally pretextual." *Id.* at 1168. An example of this third avenue is a showing the employer "actively sought to replace a number of RIF-terminated employees with new hires." *Id.* Ms. Myers' evidence targeted this third avenue. For example, she asserted Colgate hired David Gauwitz who "was much less qualified, less experienced . . . and a

---

[9]Ms. Myers offered as an example of that ongoing sex discrimination the fact that Colgate sponsored male but not female sports teams.

younger male who eventually ended up assuming Ms. Myers' job duties." However, her job duties were eliminated or dispersed throughout the Colgate Plant. As Greg McKain, a Colgate engineer, stated in his deposition testimony, "As far as the position itself, from a business standpoint view, it was a right decision, because we had too many people in the department for the size of plant we had. From a personal point of view, you know, I didn't want to see anybody lose their job." Although Mr. McKain agreed Ms. Myers had more experience, background, and training than David Gauwitz, that testimony did not controvert the fact her position was eliminated. Furthermore, "the test for position elimination is not whether the responsibilities were still performed, but rather whether the responsibilities still constituted a single, distinct position. [Plaintiff's] former responsibilities were divided up and absorbed . . . and no new person took over his former responsibilities." *Furr v. Seagate Technology, Inc.*, 82 F.3d 980, 988 (10th Cir. 1996).

The record discloses nothing to substantiate Ms. Myers' allegations and counter Colgate's evidence that the reliability engineer's tasks were dispersed or eliminated, and her position ceased to exist. Indeed, when Ms. Myers was asked in her deposition how she knew the RIF had a disproportionate impact, she responded, "It's what it seemed like."

Thus, although Ms. Myers attempts to align her facts with those in *Beaird,* 145 F.3d at 1159, and buttress that showing with support from *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 312 (1996),[10] which the district court had fully laid to rest,

[10]In *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 312 (1996), J.
(continued...)

- 10 -

we cannot substitute her arguments for factual disputes affecting the outcome of the lawsuit

under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The

district court properly granted Colgate's motion for summary judgment on her ADEA/Title

VII claims.

Similarly, though plaintiff counsel would recast the facts underlying the imposition

of sanctions under Fed. R. Civ. P. 37(a)(2)(B) to fit under Fed. R. Civ. P. 11 and shelter his

conduct within its safe harbor provision, the record manifestly belies that characterization.

Instead, any fair reading of the Magistrate Judge's hearing and order cannot disguise

plaintiff counsel's misrepresentations in the cloak of mistaken dates and unspoken

conversations. Rather than correcting the misrepresentations, plaintiff counsel unilaterally

tried to extinguish them by moving to withdraw the certificate of compliance and for a

---

[10](...continued)
Scalia clarified:

> The discrimination prohibited by the ADEA is discrimination "because of
> [an] individual's age," 29 U.S.C. § 623(a)(1) though the prohibition is
> "limited to individuals who are at least 40 years of age," § 631(a). This
> language does not ban discrimination against employees because they are
> aged 40 or older; it bans discrimination against employees because of their
> age, but limits the protected class to those who are 40 or older. The fact that
> one person is the protected class has lost out to another person in the
> protected class is thus irrelevant, so long as he has lost out because of his age.
> Or to put the point more concretely, there can be no greater inference of age
> discrimination (as opposed to "40 or over" discrimination) when a
> 40-year-old is replaced by a 39-year-old than when a 56-year-old is replaced
> by a 40-year-old. Because it lacks probative value, the fact that an ADEA
> plaintiff was replaced by someone outside the protected class is not a proper
> element of the *McDonnell Douglas* prima facie case.

continuance, again placing the burden of his abuse of Rule 37(a)(2)(B) on the court and opposing counsel.

We review the district court's order to impose a monetary sanction for violation of Rule 37(b)(2) under an abuse of discretion standard. *See* **FDIC v. Daily**, 973 F.2d 1525, 1530 (10th Cir. 1992). That review focuses on the fact-specific inquiry the district court undertook recognizing its superior vantage to do so. **Ehrenhaus v. Reynolds**, 965 F.2d 916, 920 (10th Cir. 1992). However, "[t]he district court's discretion to choose a sanction is limited in that the chosen sanction must be both just and related to the particular 'claim' which was at issue in the order to provide discovery." **Id.** (*quoting* **Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee**, 456 U.S. 694, 707 (1982)). Having reviewed this record under these directives, we conclude the district court properly exercised its discretion in sanctioning plaintiff counsel's conduct.

Lastly, Ms. Myers appeals the district court's conclusion her separate complaint alleging a violation of § 510 of ERISA was filed five days late and thus barred by the statute of limitations.[11] In so holding, the district court, recognizing Congress failed to

---

[11]Although the district court rested its dismissal on the dual grounds of the prohibition against claim splitting and the running of the applicable statute of limitations, we focus solely on the limitary bar, the sounder legal basis for granting Colgate's motion under Fed. R. Civ. P. 12(b)(6). Because § 510 broadly protects employees in the exercise of employment privileges related to the vesting and enjoyment of certain employee benefits safeguarded by ERISA and confines relief to the equitable remedies of backpay, restitution, and reinstatement, it is arguable whether the second complaint satisfactorily represents a piecemeal prosecution of the essential wrong Ms. Myers first alleged to warrant barring the complaint on this prudential policy.

provide a statute of limitations for a § 510 claim, borrowed the Kansas cause of action it found to be the most analogous, wrongful or retaliatory discharge, and applied its two-year limitary period. It then looked to ***Delaware State College***, 449 U.S. at 260, for the proposition that in an employment discrimination case, the injury occurs when the decision is communicated to the plaintiff, "not when the ill effects of the decision are felt by the plaintiff." ***Myers***, 102 F. Supp. 2d at 1224. The court then relied on the Seventh Circuit's decision in ***Tolle v. Carroll Touch, Inc.***, 977 F.2d 1129, 1141 (7th Cir. 1992), which held a cause of action accrues under § 510 of ERISA when "the termination decision is communicated to the plaintiff, not when the plaintiff is terminated or learns that her benefits are denied," observing the Tenth Circuit had yet to address the issue.

Challenging this disposition, Ms. Myers urges the most analogous cause of action in Kansas is that of a breach of contract for which Kansas law provides a five-year statute of limitations, Kan. Stat. Ann. § 60-511. For this, she relies on ***Held v. Manufacturers Hanover Leasing Corp.***, 912 F.2d 1197 (10th Cir. 1990), which applied New York law to impose the statute of limitations for breach of contract claims although "it is conceded . . . the Court also ruled that a claim for interference with protected rights was most analogous to employment discrimination claims."[12] Ms. Myers bolsters her contention of error with

---

[12]In ***Held v. Manufacturers Hanover Leasing Corp.***, 912 F.2d 1197, 1203 (10th Cir. 1990), the court deciphered plaintiff's § 510 claim to involve "two distinct causes of action." The first was an action for declaratory and injunctive relief to redress the alleged violation of ERISA; the second, to recover benefits due and enforce rights under the plan's terms.

- 13 -

the court's acknowledgment "neither the Tenth Circuit nor the district courts for the district of Kansas has characterized ERISA § 510 claims under Kansas law." *Myers*, 102 F. Supp. 2d at 1224.

In Count 1 of her second complaint, Ms. Myers alleged she was deprived of her retirement and pension benefits under ERISA § 510 "as a result of her termination of employment." Despite her other allegations,[13] we may construe its theory of recovery under § 510 to target the unlawful acts of an employer:

> to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan . . . .

29 U.S.C. § 1140. Such violations may be enforced under § 502(a)(3) which sets forth "'a panoply of remedial devices' for participants and beneficiaries of benefit plans." *Zimmerman v. Loss Equipment, Inc.,* 72 F.3d 822, 827 (10th Cir. 1995) (*quoting Firestone Tire & Rubber Co. v. Bruce*, 489 U.S. 101, 108 (1989)). However, because Congress failed to include a statute of limitations for the enforcement of rights provided by § 510, we must look to state law to determine the appropriate statute of limitations provided for an analogous cause of action. *Held*, 912 F.2d at 1202-03.

---

[13]Ms. Myers alleged the termination caused her emotional distress and damage to her reputation and sought damages for humiliation and embarrassment as well as punitive damages, allegations and remedies not cognizable under § 510. *Zimmerman v. Loss Equipment, Inc.,* 72 F.3d 822, 827 (10th Cir. 1995).

To decide the analogous Kansas cause of action, we must first characterize a § 510 claim under federal law, a task made difficult by "the variant nature of the several rights recognized in that one provision." *Teumer v. General Motors Corp.*, 34 F.3d 542, 547 (7th Cir. 1994). *Sandberg v. KPMG Peat Marwick, L.L.P.*, 111 F.3d 331 (2d Cir. 1997), states:

> Section 510 protects against (1) the disruption of employment privileges to prevent the vesting or enjoyment of benefit rights; (2) the disruption of employment privileges to punish the exercise of benefit rights; and (3) the disruption of employment privileges to prevent or punish the giving of testimony in any proceeding relating to ERISA or a sister act.

*Id.* at 334. Ms. Myer's ERISA complaint, read as it must be to seek the first category of rights, echoes a state-law cause of action for wrongful termination or retaliatory discharge, "catch-all descriptions of state-law causes of action encompassing an employee's claim that he was discharged in violation of public policy." *Id.* Kansas Statutes Annotated § 60-513(a)(4)[14] provides a two-year statute of limitations to a claim of wrongful discharge. *See Miller v. Foulston, Siefkin, Powers & Eberhardt*, 790 P.2d 404, 413 (Kan. 1990). We

---

[14]Kan. Stat. Ann. § 60-513 states:

**Actions limited to two years.** (a) The following actions shall be brought within two years:

. . . .

An action for injury to the rights of another, not arising on contract, and not herein enumerated.

- 15 -

therefore hold under Kansas law the statute of limitations to be applied to a § 510 ERISA claim based on the wrongful discharge of the plan participant is two years.[15]

Contrary to the district court's statement the Tenth Circuit had yet to address the issue of when a § 510 cause of action accrues, we did so in **Held,** albeit nontranslucently. There, on July 13, 1984, when Mr. Held was told he would not be reassigned to another position, he resigned. We found on that date "Mr. Held was constructively discharged." 912 F.2d at 1205. Applying New York law, we then concluded the claim for injunctive relief was most analogously one for employment discrimination which under New York law is barred after three years. Thus, we held the complaint was precluded after July 14, 1987, three years after he was told of the employment decision. **Id.** at 1205.

Like the Seventh Circuit in **Tolle**, 977 F.2d at 1129, we hold that a cause of action accrues under § 510 of ERISA when the plaintiff is told of the adverse employment decision, not on the date she is terminated or her benefits denied. "[B]ecause the purpose of Section 510, like intentional employment discrimination cases, is to prevent actions taken for an unlawful purpose, it is the decision and the participant's discovery of this

---

[15]Not only **Held**, 912 F.2d at 1197, but also, **Trustees of Wyoming Laborers Health & Welfare Plan v. Morgen & Oswood Constr. Co.**, 850 F.2d 613 (10th Cir. 1988), provide guidance. The Seventh Circuit in **Teumer v. General Motors Corp.**, 34 F.3d 542, 544-46 (7th Cir. 1994); and **Tolle v. Carroll Touch, Inc.**, 977 F.2d 1129 (7th Cir. 1992); and Second Circuit in **Sandberg v. KPMG Peat Marwick, L.L.P.**, 111 F.3d 331 (2d Cir. 1997), set forth the same analysis although the **Sandberg** court, confronted with different claims brought under § 510 concluded "a single statute of limitations should govern all ERISA claims under section 510." 111 F.3d at 335. That issue is not before us here.

decision that dictates accrual." *Id.* at 1140-41.  The district court did not err in so holding.

We therefore affirm its conclusion.


ENTERED FOR THE COURT


John C. Porfilio
Senior Circuit Judge