**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 21 2004**

**PATRICK FISHER**
**Clerk**

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

JAMES R. MILLSAP; JOSE RAMON; CATHY KIRBY; LAWRENCE WILSON; WANDA HUNTER; RITA OWENS; BOB KEPHART; JIM COOPER; HOWARD BOWLIN; and RAY PETERSON, for themselves and all others similarly situated,

    Plaintiffs-Appellees,

v.

McDONNELL DOUGLAS CORPORATION,

    Defendant-Appellant.

No. 03-5124

---

UNITED STATES SECRETARY OF LABOR; AMERICAN ASSOCIATION OF RETIRED PEOPLE; UNITED STATES CHAMBER OF COMMERCE,

    Amici Curiae.

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**
**(D.C. No. 94-CV-633H)**

---

Paul W. Mollica of Meites, Mulder, Burger & Mollica, Chicago, Illinois (Thomas R. Meites, Michael M. Mulder, and Josie Raimond of Meites, Mulder, Burger & Mollica, Chicago, Illinois; Joseph R. Farris, Paula J. Quillan, and Jody R. Nathan of Feldman, Franden, Woodard, Farris & Boudreaux, Tulsa, Oklahoma; Bill Brumley of Brumley & Bishop, Tulsa, Oklahoma; and Christopher G. Mackaronis of Bell, Boyd & Lloyd, Washington D.C., with him on the briefs) for Plaintiffs-Appellees.

Thomas E. Wack of Bryan Cave, LLP, St. Louis, Missouri (Daniel S. Hoffman and Sean Connelly of Hoffman, Reilly, Pozner & Williamson LLP, Denver, Colorado; John W. Walbran of McDonnell-Douglas Corporation, St. Louis, Missouri, with him on the brief) for Defendant-Appellant.

Robin Springberg Parry of the United States Department of Labor, Washington D.C. (Howard M. Radzely, Acting Solicitor of Labor, Timothy D. Hauser, Associate Solicitor, Elizabeth Hopkins, and Mark E. Papadopoulos of the United States Department of Labor, Washington D.C., on the brief) for *amicus curiae* United States Secretary of Labor in support of Plaintiffs-Appellees.

Mary Ellen Signorille and Melvin R. Radowitz, Washington D.C., for *amicus curiae* American Association of Retired People in support of Plaintiffs-Appellees.

William J. Kilberg, Mark A. Perry, and Joseph B. Maher, of Gibson, Dunn & Crutcher LLP, Washington D.C.; Stephen A. Bokat and Ellen Dunham Bryant of the National Chamber Litigation Center, Washington D.C., for *amicus curiae* United States Chamber of Commerce in support of Defendant-Appellant.

Before **LUCERO**, **BALDOCK**, and **TYMKOVICH**, Circuit Judges.[*]

---

[*] Defendant McDonnell Douglas Corporation's October 22, 2003, unopposed motion to file a supplemental appendix is granted. See 10th Cir. R. 30.2(B).

**BALDOCK**, Circuit Judge.

Section 510 of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461 (ERISA), proscribes interference with a participant's rights under a qualified benefit plan. Section 502(a)(3) of ERISA provides the plan participant with his exclusive remedies for a § 510 violation. Under § 502(a)(3), the participant may bring a civil action to (1) enjoin any act or practice which violates any provision of Title I of ERISA or the terms of the plan, or (2) obtain other appropriate equitable relief to redress such violations or enforce any provisions of Title I of ERISA or the terms of the plan. 29 U.S.C. § 1132(a)(3). We granted Defendant McDonnell Douglas Corporation's petition for interlocutory appeal in this class action to decide a controlling issue of law involving § 502(a)(3). See 28 U.S.C. § 1292(b); Fed. R. App. P. 5(a). The parties stipulated to and the district court certified the following issue for review:

> [W]hether, in this ERISA § 510 case and as a result of <u>Great-West Life & Annuity Ins. Co. v. Knudson</u>, 534 U.S. 204 (2002), backpay (and, as a result, any other damages based upon backpay) are available as "appropriate equitable relief" to the class members pursuant to ERISA § 502(a)(3).

The district court answered yes and denied Defendant's motion seeking to preclude backpay as a potential remedy for the class. Reviewing the district court's resolution of the question of law de novo, we answer no and reverse.

I.

The facts are undisputed. Defendant manufactured and assembled military aircraft at a plant in Tulsa, Oklahoma. Defendant's employees at the plant participated in pension and/or health care plans qualified under ERISA. Defendant announced the closing of the Tulsa plant in December 1993. Defendant subsequently laid off all employees at the Tulsa plant. The Plaintiff class consists of 1,074 of those employees. Plaintiffs filed this action in 1994 alleging Defendant violated § 510 of ERISA. Section 510 provides in relevant part: "It shall be unlawful for any person to discharge . . . or discriminate against a participant or beneficiary . . . for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan [or Title I of ERISA.]" 29 U.S.C. § 1140. According to the complaint, Defendant closed the Tulsa plant to prevent Plaintiffs from attaining eligibility for benefits under their pension and health care plans. Plaintiffs requested damages, an order requiring Defendant to make restitution to their benefit plans, and any other equitable or remedial relief.[1]

---

[1] Plaintiffs primarily sought legal relief at the onset of this litigation. Plaintiffs specifically requested damages in their complaint and amended complaint, but did not mention reinstatement. Plaintiffs moved for and the district court certified a *damage class action* pursuant to Fed. R. Civ. P. 23(b)(3). Plaintiffs did not move for a class action under Fed. R. Civ. P. 23(b)(2), which permits class actions for declaratory or injunctive relief (such as reinstatement).

(continued...)

The district court bifurcated the case into liability and remedial phases. The case proceeded to trial on the issue of Defendant's liability under ERISA § 510. After a ten day bench trial, the district court concluded Defendant violated § 510. The court entered a thorough published order pursuant to Fed. R. Civ. P. 52(a) reciting its findings and conclusions. Millsap v. McDonnell-Douglas Corp., 162 F. Supp. 2d 1262 (N.D. Okla. 2001). We need not repeat all those findings and conclusions here.[2] For purposes of this appeal, the district court's conclusion Defendant violated § 510 in closing the Tulsa plant is undisputed.

In the remedial phase, Plaintiffs argued Defendant's violation of § 510 entitled the class to lost benefits, backpay, and reinstatement (or front pay in lieu of reinstatement), among other things. Defendant disagreed and filed motions to

---

[1](...continued)
See Amchem Prod., Inc. v. Windsor, 521 U.S. 591, 614-15 (1997). Plaintiffs also moved for a jury trial on their ERISA § 510 claim. Plaintiffs abandoned their restitution claim in that motion and urged the court to handle any reinstatement claim (*should* the Tulsa plant reopen) as an "ancillary matter." Plaintiffs therefore argued they had the right to a jury because only their request for money damages remained. See infra n.4. Thus, at the onset of the litigation, the focus of Plaintiffs' complaint was on the recovery of legal damages. See Skinner v. Total Petroleum, Inc., 859 F.2d 1439, 1444 (10th Cir. 1998) (per curiam) (explaining the court must consider backpay as "in the nature of legal damages" when the focus of the plaintiff's complaint is primarily on the recovery of legal damages).

[2] The district court found Defendant studied the correlation between closing a plant with a more senior workforce and maximizing a surplus from its pension plans. The Tulsa plant had, on average, the most senior workforce within the company. Defendant learned it stood to gain $24.7 million in pension and health care coverage savings if the Tulsa plant closed. Defendant thereafter closed the Tulsa plant. Millsap, 162 F. Supp. 2d at 1267-73.

preclude an award of reinstatement, front pay, and backpay under ERISA. The district court denied Defendant's motion on the availability of backpay, but granted Defendant's motion to preclude reinstatement and front pay. Millsap v. McDonnell Douglas Corp., No. 94-CV-633-H, 2002 WL 31386076 (N.D. Okla. Sept. 25, 2002) (unpublished disposition). The court reasoned the circumstances of this case made reinstatement impossible and front pay inappropriate because the court could not conclude that but for Defendant's discriminatory conduct the Tulsa plant would still be open. The district court held, however, Plaintiffs could recover backpay because the award constituted "equitable relief" under ERISA § 502(a)(3). The court reasoned backpay constituted "equitable restitution" or alternatively could be awarded because Plaintiffs sought backpay in conjunction with lost pension benefits, lost vacation pay, lost insurance, and reinstatement or front pay.

The parties subsequently entered into a "Stipulation of Settlement." The settlement compensates Plaintiffs in the amount of $36 million for their lost pension and health care benefits. The settlement stipulation requires judicial resolution of the availability of backpay under ERISA § 502(a)(3). The district court approved the settlement, see Fed. R. Civ. P. 23(e), and certified the

controlling question of law for appeal. See 28 U.S.C. § 1292(b). We granted the parties permission to appeal on the narrow issue certified.[3]

## II.

ERISA regulates employee pension and welfare benefit plans. See 29 U.S.C. §§ 1002(1)-(2), 1003(a); Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 44

---

[3] Plaintiffs admitted in their brief that backpay and restoration of benefits are the *only* remedies available in this case. (Aple's Br. at 24). Restoration of benefits is no longer an issue as a result of the parties' settlement. Plaintiffs are not seeking an injunction or mandamus under § 502(a)(3). Plaintiffs also conceded at oral argument, and made clear in their brief, that they are not seeking either equitable or legal restitution under § 502(a)(3). Additionally, Plaintiffs have not appealed the district court's holding that reinstatement and front pay are inappropriate or impossible remedies in this case, nor does the parties' "Stipulation of Settlement" provide a mechanism for Plaintiffs to appeal the district court's order denying reinstatement and front pay. At oral argument, Plaintiffs' counsel misrepresented the record and state of proceedings in the district court. When questioned by the panel regarding the Plaintiffs' decision not to appeal the denial of reinstatement, counsel responded that because this is an interlocutory appeal all other decisions – including the district court's order denying reinstatement – were preserved. The parties' "Stipulation of Settlement," however, conclusively demonstrates otherwise. The settlement provides the litigation is terminated if we determine backpay is unavailable unless the Supreme Court grants a writ of certiorari. (Aplt's App. at 475-76). The settlement further provides that if we determine backpay is a remedy in the case, absent the Supreme Court granting a writ of certiorari, the case will be "remanded for further proceedings and a determination of the amount of backpay, if any, after which either party may appeal from the judgment *as to the amount of backpay and any other damages based on backpay* and McDonnell Douglas may appeal from the Orders dated September 5, 2001 (liability) and September 25, 2002 (backpay)." (Id. at 476) (emphasis added). The settlement does not provide any procedure for Plaintiffs to appeal the district court's holding that reinstatement and front pay are inappropriate remedies in this case. (Id. at 476-77). Thus, this appeal *only* involves Plaintiffs' freestanding claim for backpay.

7

(1987). Congress designed ERISA "to promote the interests of employees and their beneficiaries in employee benefit plans." Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 137 (1990) (internal quotations and citation omitted). ERISA's "complex and detailed" statutory scheme "resolved innumerable disputes between powerful competing interests – not all in favor of potential plaintiffs." Mertens v. Hewitt Assoc., 508 U.S. 248, 262 (1993). Federal courts interpreting ERISA must take into account those competing interests, "such as Congress' desire to offer employees enhanced protection for their benefits, on the one hand, and, on the other, its desire not to create a system that is so complex that administrative costs, or litigation expenses, unduly discourage employers from offering welfare benefit plans in the first place." Varity Corp. v. Howe, 516 U.S. 489, 497 (1996); see also Lockheed Corp. v. Spink, 517 U.S. 882, 887 (1996) (explaining ERISA does not require employers to establish employee benefit plans or a certain level of benefits under a plan).

ERISA's civil enforcement scheme, 29 U.S.C. § 1132, consists of several carefully integrated provisions. Massachusetts Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 146 (1985). The Court explained:

> Under the civil enforcement provisions of § 502(a), a plan participant or beneficiary may sue to recover benefits due under the plan, to enforce the participant's rights under the plan, or to clarify rights to future benefits. Relief may take the form of accrued benefits due, a declaratory judgment on entitlement to benefits, or an injunction against a plan administrator's improper refusal to pay benefits.

8

Pilot Life, 481 U.S. at 53. "Congress intended § 502(a) to be the exclusive remedy for rights guaranteed under ERISA, including those provided by § 510[.]" Ingersoll-Rand, 498 U.S. at 144; see also Zimmerman v. Sloss Equip., Inc., 72 F.3d 822, 828 (10th Cir. 1995).

The Supreme Court has repeatedly emphasized that Congress' deliberate care in comprehensively drafting ERISA's enforcement scheme "provide[s] strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly." Russell, 473 U.S. at 146; see also Great-West, 534 U.S. at 209; Mertens, 508 U.S. at 254; Harris Trust and Savings Bank v. Salomon Smith Barney Inc., 530 U.S. 238, 247 (2000); Pilot Life, 481 U.S. at 54. The Court has been equally consistent in its reluctance to tamper with ERISA's enforcement scheme because "'[t]he presumption that a remedy was deliberately omitted from a statute is strongest when Congress has enacted a comprehensive legislative scheme including an integrated system of procedures for enforcement.'" Russell, 473 U.S. at 147 (quoting Northwest Airlines, Inc. v. Transport Workers, 451 U.S. 77, 97 (1981)). The exclusivity of § 502(a)'s remedial provisions is consistent with ERISA's plain language and legislative history. Pilot Life, 481 U.S. at 54-55.

A.

9

"In ERISA cases, as in any case of statutory construction, our analysis begins with the language of the statute." Harris Trust, 530 U.S. at 254 (internal quotations and brackets omitted). ERISA § 502(a)(3) provides:

> A civil action may be brought . . . by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of [Title I of ERISA] or the terms of the plan, or (B) to obtain other appropriate *equitable relief* (i) to redress such violations or (ii) to enforce any provisions of [Title I of ERISA] or the terms of the plan[.]

29 U.S.C. § 1132(a)(3) (emphasis added). In Mertens and Great-West, the Supreme Court made clear only equitable relief is available under § 502(a)(3). The Court laid to rest any suggestion that other relief may also be available under § 502(a)(3).

In Mertens, the plaintiff class sought monetary relief under § 502(a)(3) for losses to their employee benefit plan as a result of a non-fiduciary defendant's knowing participation in a breach of fiduciary duty. Plaintiffs argued their request for monetary relief constituted "equitable relief" under § 502(a)(3) because common law courts of equity had exclusive jurisdiction over virtually all actions by beneficiaries for breach of trust. Plaintiffs also pointed out that equity courts had the power to award money damages against the trustee and third persons who knowingly participated in the trustee's breach. Mertens, 508 U.S. at 255-56. The Court rejected plaintiffs' argument for two reasons.

10

First, the Court interpreted the phrase "equitable relief" in § 502(a)(3) as referring only "to those categories of relief that were *typically* available in equity (such as injunction, mandamus, and restitution, but not compensatory damages)." Id. at 256. The Court explained:

> Since *all* relief available for breach of trust could be obtained from a court of equity, limiting the sort of relief obtainable under § 502(a)(3) to "equitable relief" in the sense of "whatever relief a common-law court of equity could provide in such a case" would limit the relief *not at all*. We will not read the statute to render the modifier superfluous.

Id. at 257-58 (footnote omitted). Second, the Court found plaintiffs' proposed interpretation of § 502(a)(3) inconsistent with ERISA's overall statutory scheme, which distinguished "equitable" from "remedial" relief in § 409(a), and "equitable" from "legal" relief in § 502(g)(2)(E) and other ERISA provisions, namely 29 U.S.C. §§ 1024(a)(5)(C), 1303(e)(1), 1451(a)(1). Id. at 258-59. The Court held plaintiffs could not recover under § 502(a)(3) because they sought legal relief, compensatory damages, not typically available in equity. Id. at 255-56, 263.

In Great-West, the Court again considered the type of relief typically available in equity. There, the defendant was a beneficiary of an ERISA qualified plan. The defendant-beneficiary was injured in an automobile accident. The plan covered $411,157 of defendant-beneficiary's medical expenses. The plaintiff-insurance company paid the majority of those expenses pursuant to an insurance

11

agreement with the plan. Thereafter, the defendant-beneficiary filed suit in state court against the manufacturer of the car she was riding in at the time of the accident and ultimately settled her claim for $650,000. Great-West, 534 U.S. at 207-08.

The defendant-beneficiary's plan included a reimbursement provision. The reimbursement provision provided the plan with the right to recover any benefit payments recovered from a third party. The provision also imposed personal liability on the beneficiary up to the amount recovered from a third party if the beneficiary failed to reimburse the plan. The plan assigned the right to enforce the reimbursement provision to the insurance company. The insurance company filed suit under ERISA § 502(a)(3) to recoup $411,157 under the plan's reimbursement provision because the defendant-beneficiary only allocated $13,829 of the settlement to satisfy the insurance company's claim under that provision. Id.

The Court held the insurance company could not maintain its action under § 502(a)(3) because it sought, "in essence, to impose personal liability on [defendant] for a contractual obligation to pay money – relief that was not typically available in equity." Id. at 210. As in Mertens, the Court again "rejected a reading of the statute that would extend the relief obtainable under § 502(a)(3) to whatever relief a court of equity is empowered to provide in the

particular case at issue (which could include legal remedies that would otherwise be beyond the scope of the equity court's authority)." Id. In so holding, the Court refused to adjust ERISA's carefully crafted and detailed enforcement scheme. Id. at 221.

The insurance company's claim was not "typically available in equity," and thus not actionable under § 502(a)(3). Id. at 210. The insurance company only sought legal relief – money damages – for defendant's breach of duty. Id. The Court explained that "[a]lmost invariably . . . suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages,' as that phrase has *traditionally* been applied, since they seek no more than compensation for loss resulting from the defendant's breach of legal duty." Id. (emphasis added, internal quotations and citation omitted).

Thus, the question under § 502(a)(3) in this case is whether Plaintiffs' requested relief was "typically available in equity." Mertens, 508 U.S. at 256; Great-West, 534 U.S. at 210. Answering this question requires us to consider "the general types of relief provided by courts of law and equity." Chauffeurs, Teamsters and Helpers, Local No. 391 v. Terry, 494 U.S. 558, 571 n.8 (1990). "[C]onsulting . . . standard current works such as Dobbs, Palmer, Corbin, and the

Restatements, [will ordinarily] make the answer clear." Great-West, 534 U.S. at 217.[4]

## B.

The backpay Plaintiffs seek is a creature of positive law; that is, the remedy of backpay did not exist at common law. See NLRB v. Jones & Laughlin Steel Corp., 301 U.S. 1, 48 (1937); Bertot v. School Dist. No. 1, Albany County, 613 F.2d 245, 250 (10th Cir. 1979) (en banc). Backpay claims, however, "do not differ remedially from the personal injury claim for lost wages, or the contract claim for past wages due[.]" 2 Dan B. Dobbs, Law of Remedies § 6.10(5) (1993); see also 1 George E. Palmer, Law of Restitution § 4.1 (1978 & Supp. 2003) (describing a claim for breach of personal services contract as sounding in quasi-contract for money damages). A backpay claim is remedially analogous to personal injury or breach of contract claims because backpay awards compensate

---

[4] Federal courts also routinely examine whether a plaintiff's requested relief is legal or equitable in nature to determine the existence of the right to a jury trial under the Seventh Amendment. See, e.g., Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 42 (1989). The Seventh Amendment provides that "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved[.]" The Supreme Court has long "understood 'Suits at common law' to refer 'not merely [to] suits, which the *common* law recognized among its old and settled proceedings, but [to] suits in which *legal* rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered.'" Feltner v. Columbia Pictures Television, Inc., 523 U.S. 340, 348 (1998) (quoting Parsons v. Bedford, 3 Pet. 433, 447 (1830)).

14

employees for lost wages and benefits before trial.[5] Smith v. Diffee Ford-Lincoln-Mercury, Inc., 298 F.3d 955, 964 (10th Cir. 2002); 2 Henry H. Perritt, Jr., Employee Dismissal Law and Practice § 9.46 (4th ed. 1998); Robert Belton, Remedies in Employment Discrimination Law § 9.3 (1992); Dobbs, Law of Remedies § 6.10(5) at 227 n.15. Backpay is compensatory because the award is measured by an employee's loss rather than an employer's gain. Id.; Ford, 458 U.S. at 229 (noting that "paying backpay damages is like paying an extra worker who never came to work"); Albemarle Paper Co., 422 U.S. at 440 (Marshall, J., concurring) (explaining that backpay under Title VII is generally computed by determining the amount of compensation lost as a direct result of the employer's discriminatory action).

"The Court has recognized that compensation is a purpose 'traditionally associated with legal relief.'" City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 710-11 (1999) (quoting Feltner, 523 U.S. at 352); see also

---

[5] The Supreme Court has described the compensatory nature of backpay under § 10(c) of the NLRA, 29 U.S.C. § 160(c), and § 706(g) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(g). See Phelps Dodge Corp. v. NLRB, 313 U.S. 177, 194 (1941) (explaining the National Labor Relations Board effectuates the remedial scheme of the NLRA by ordering compensation for lost wages); Albemarle Paper Co. v. Moody, 422 U.S. 405, 422 (1975) (explaining bad faith is not an element of a Title VII backpay award lest the remedy would become punitive rather than compensatory); Ford Motor Co. v. EEOC, 458 U.S. 219, 230 (1982) (explaining a secondary purpose of Title VII is to compensate employees for their injuries).

15

Dobbs, The Law of Remedies § 6.10(5) at 227 n.15 ("Backpay is an element of compensation . . . a traditional function of *damages* at law."). An award of backpay, without more, is therefore in the nature of compensatory damages.[6] See Terry, 494 U.S. at 570 (explaining "the only remedy sought is a request for compensatory damages representing backpay and benefits."); Waldrop v. Southern Co. Serv., Inc., 24 F.3d 152, 158 (11th Cir. 1994) (noting "that it has long been the general rule that back wages are legal relief in the nature of compensatory damages."); Dobbs, The Law of Remedies § 6.10(5) at 226 (noting backpay is an ordinary damages claim). "Generally, an award of money damages was the *traditional* form of relief offered in the courts of law." Wooddell v. Intern'l Brotherhood of Elec. Workers, Local 71, 502 U.S. 93, 97 (1991) (emphasis added); Curtis v. Loether, 415 U.S. 189, 196 (1974); Mertens, 508 U.S. at 255 ("Money damages are, of course, the classic form of *legal* relief."); 1 John N.

---

[6] In Bertot, we relied on an Eighth Circuit case interpreting Title VII to hold backpay is an element of equitable relief under 42 U.S.C. § 1983 when backpay is an integral part of the equitable remedy of reinstatement. 613 F.2d at 250. In Bertot, the district court ordered reinstatement. Id. at 247. We, of course, express no opinion on whether our classification of backpay under the factually (i.e., backpay ordered with reinstatement) and legally (i.e., arising under § 1983) distinguishable circumstances in Bertot is correct in light of the Supreme Court's subsequent pronouncements on the subject. See Great-West, 534 U.S. at 218 n.4; Del Monte Dunes, 526 U.S. at 710 (classifying a takings claim under § 1983 as legal). The dissent suggests we have turned our back on Bertot. (Dissent Op. at 5). Much to the contrary, we simply do not see the utility in relying on a factually and legally distinguishable case to interpret ERISA § 502(a)(3) when controlling Supreme Court precedent exists.

16

Pomeroy, A Treatise on Equity Jurisprudence § 237d (5th ed. 1941) (explaining

"[t]he award of mere compensatory damages . . . is a remedy peculiarly belonging

to the province of the law courts[.]")  Thus, a claim for backpay is "almost an

exemplar of a claim at law."  Dobbs, The Law of Remedies § 6.10(5) at 226; see

also Colleen P. Murphy, Misclassifying Monetary Restitution, 55 SMU L. Rev.

1577, 1633 (2002) ("The backpay remedy is more appropriately characterized as

damages for plaintiffs losses and thus legal relief.").[7]

---

[7] The dissent states "the guidance provided by Dobbs is scant but suggests
the conclusion that with respect to the class plaintiffs who were wrongfully
discharged, the backpay remedy is equitable."  (Dissent Op. at 5).  We quote
Professor Dobbs at length to let the readers draw their own conclusions:

> Reinstatement in a job appears to be equitable because such relief is
> essentially injunctive.  But backpay seems on the surface to be an
> ordinary damages claim, almost an exemplar of a claim at law.
> Backpay claims do not differ remedially from the personal injury
> claim for lost wages, or the contract claim for past wages due, for
> example.  So while reinstatement is clearly equitable as a form of
> injunctive relief, backpay seems to be just as clearly legal.  On the
> basis of such observations, it would seem that a reinstatement claim
> standing alone would be tried to a judge without a jury while a
> backpay claim standing alone would be tried to a jury if one is
> demanded.  If both kinds of relief are sought in a single case, the
> Dairy Queen rule would seem to require a jury trial on all common
> issues of fact – such as whether the discharge was discriminatory.
> But in fact the cases do not yield up to any single conclusion.

Dobbs, Law of Remedies § 6.10(5) at 226 (footnotes omitted); see also infra n.9.
Professor Dobbs then explains the different rules for determining when a jury trial
attaches under different statutory provisions.  Id. at 226-33.  Professor Dobbs
distinguishes between (1) cases arising under Title VII where backpay is generally
(continued...)

In this case, Plaintiffs seek backpay from the date of the Tulsa plant's closure through the date of trial. Plaintiffs propose to calculate their backpay award based on the compensation each individual class member would have earned during the backpay period. Plaintiffs argue they are entitled to backpay to make them whole for Defendant's wrongful termination. Based on Plaintiffs' own method of calculation and arguments, we easily conclude Plaintiffs are simply seeking compensation for lost wages before trial. Plaintiffs' proposed method of calculating their backpay award is based on each individual class member's loss rather than Defendant's gain. Plaintiffs' freestanding claim for backpay is thus in the nature of compensatory damages. At common law, the award of compensatory damages was peculiarly within the province of the law courts. Plaintiffs' backpay claim is therefore appropriately classified as legal relief. Del Monte Dunes, 526 U.S. at 710-11; Mertens, 508 U.S. at 255.

## III.

The only relief remaining available to Plaintiffs is compensatory damages representing backpay. Plaintiffs nevertheless argue their backpay claim is "equitable" for three reasons. First, Plaintiffs argue their backpay claim is

---

[7](...continued)
considered equitable, id. at 193, 226-29, and (2) cases arising under other statutory provisions, such as the ADEA, where backpay is considered legal. Id. at 229-33.

equitable under "an exception to the general rule" that money damages constitute legal relief.  See Terry, 494 U.S. at 570-71.  Second, Plaintiffs analogize § 502(a)(3) to Title VII § 706(g) and argue a backpay award under § 502(a)(3) is an integral part of the equitable remedy of reinstatement.  See infra n.16.  Third, Plaintiffs argue backpay should be classified as "equitable" under § 502(a)(3) to further the purposes of ERISA and make them whole.  Because the Supreme Court has rejected each of these arguments, we do the same.

## A.

Plaintiffs first argue their backpay claim is equitable because it is a monetary award incidental to or intertwined with reinstatement.[8]  In Terry, 494 U.S. at 570-71, the Supreme Court recognized two exceptions to the general rule that a monetary award constitutes legal relief.[9]  The relevant exception provides a

---

[8] The remedy of reinstatement is essentially injunctive relief.  Dobbs, Law of Remedies § 6.10(5) at 226.  The Court has made "clear that judgments compelling employment, reinstatement, or promotion are equitable[.]"  Lorillard v. Pons, 434 U.S. 575, 583 n.11 (1978) (internal quotations and citation omitted); Great-West, 534 U.S. at 211 n.1 (noting an injunction is inherently an equitable remedy).

[9] The exception Plaintiffs did not argue on appeal provides damages are equitable when they are restitutionary.  Terry, 494 U.S. at 570.  The dissent nevertheless finds solace in the restitutionary exception.  (Dissent Op. at 6).  As Professor Dobbs explained, however, a characterization of backpay as restitutionary "appears to be doubly wrong, since a claim does not become equitable by being restitutionary and since backpay does not seem to fit the

(continued...)

monetary award incidental to or intertwined with injunctive relief may be characterized as equitable.[10]   Id. at 571.  Plaintiffs reliance on this exception is flawed.

In Terry, 494 U.S. at 571, the Court held the incidental to or intertwined with exception did not apply where the plaintiffs sought only backpay and benefits.  There, plaintiffs requested reinstatement, but dismissed the claim when the remedy became impossible after their employer filed bankruptcy.[11]   Id. at 562-

_____

[9](...continued)
restitutionary category in any event."  Dobbs, Law of Remedies § 6.10(5) at 227 (footnotes omitted).  A backpay claim is not restitutionary because, as explained above, the nature of the remedy is to compensate and *not* to prevent unjust enrichment.  Id. § 6.10(5) at 227 n.15.  The backpay Plaintiffs seek is not money the Defendant wrongfully withheld, but rather, wages they would have received absent their termination.  "Such relief is not restitutionary."  Terry, 494 U.S. at 571.  Simply characterizing backpay as restitutionary is of no avail either because the award, at best, constitutes legal restitution not typically available in equity.  Great-West, 534 U.S. at 213-14, 218; see also Clair v. Harris Trust and Sav. Bank, 190 F.3d 495, 498 (7th Cir. 1999); Helfrich v. PNC Bank, Ky., Inc., 267 F.3d 477, 482-83 (6th Cir. 2001) (holding a plaintiff who denominated his requested relief under § 502(a)(3) as "restitution" while measuring that relief with reference to his losses rather than defendant's gain was precluded from recovering the money damages as equitable relief).

[10] Plaintiffs use the terms "incidental" and "integral" interchangeably.  (See Aple's Br. at 12-13, 22, 30).  At oral argument, Plaintiffs' disclaimed reliance on the Supreme Court's "incidental to or intertwined with" exception.  Instead, Plaintiffs argued that backpay was "integral" to their requested reinstatement.  We agree with Professor Dobbs, however, that "if 'integral' has any different meaning [from 'incidental'] it is difficult to see what it could be."  Dobbs, Law of Remedies § 6.10(5) at 227 n.11.

[11] Plaintiffs attempt to distinguish Terry on the ground the plaintiffs did not
(continued...)

20

63. The Court held the exception did not apply notwithstanding that plaintiffs had requested reinstatement at one time during the pendency of the action.[12] Id. at 571. In this case, the district court similarly dismissed Plaintiffs' reinstatement claim due to impossibility. Plaintiffs admit "[i]t was an artifact of this case proceeding years beyond possible reinstatement that left backpay and restoration of benefits as *the only remedies*." (Aple's Br. at 24 (emphasis added)). Notwithstanding the unfortunate delays inherent in modern litigation, see Ford

---

[11](...continued)
seek reinstatement in that case. (Aple's Br. at 18). The district court in Terry, however, specifically noted that "[i]n addition to *requesting reinstatement* and other injunctive relief[,] Plaintiffs seek punitive damages and other monetary relief for lost wages and health benefits and for mental and emotional distress." Terry v. Chauffeurs, Teamsters and Helpers, Local 391, 676 F. Supp. 659, 661 (M.D.N.C. 1987) (emphasis added).

[12] Relying on Skinner, 859 F.2d at 1444, the dissent suggests we should characterize backpay as equitable whenever the award is requested with reinstatement. (Dissent Op. at 11-12). Such a characterization is correct in Title VII and NLRA cases. See infra n.16; West v. Gibson, 527 U.S. 212, 217 (1999). The characterization is equally incorrect, as explained in Skinner, when backpay is claimed under another anti-discrimination statute, such as 42 U.S.C. § 1981, which does not classify backpay as equitable. Skinner, 859 F.2d at 1443-44. In any event, we rejected characterizing the backpay at issue in Skinner as equitable, despite the plaintiff's request for reinstatement, because the focus of the plaintiff's complaint was on the recovery of legal damages. Id. at 1444. Like Skinner, other courts considering the nature of backpay under employment statutes outside the context of Title VII and the NLRA have treated backpay as legal. See Lorillard, 434 U.S. at 583-84 (Age Discrimination in Employment Act); Wooddell, 502 U.S. at 97-98 (Labor Management Reporting and Disclosure Act); Diffee-Ford-Lincoln Mercury, 298 F.3d at 964-65 (Family Medical Leave Act); Waldrop, 24 F.3d at 159 (Rehabilitation Act); Crocker v. Piedmont Aviation, Inc., 49 F.3d 735, 749 (D.C. Cir. 1995) (Airline Deregulation Act).

21

Motor Co., 458 U.S. at 221, the fact remains in this case "the only remedy sought is a request for compensatory damages representing backpay[.]" Terry, 494 U.S. at 570. Consequently, the facts necessary to support the incidental to or intertwined with exception are "clearly absent from the case." Id. at 571; see also Hopkins v. Saunders, 199 F.3d 968, 977 (8th Cir. 1999) (holding "[b]ecause the district court refused to grant [plaintiff] reinstatement or any other injunctive relief, the damage award was neither incidental to nor intertwined with any other relief.").

Plaintiffs also attempt to "re-classify" backpay as equitable relief because at common law an equity court had the power to award legal relief as an incident to equitable relief. See Pomeroy, Equity Jurisprudence §§ 181, 231 (explaining a court of equity could grant legal remedies in a case within the equity court's exclusive or concurrent jurisdiction). Plaintiffs' attempt fails. An equity court at common law did not have the power to award legal relief where, as here, equitable relief was unavailable. Id. § 237d. Moreover, even if an equity court had the power to provide Plaintiffs' requested legal relief, the Court in Mertens, 508 U.S. at 256-58, and Great West, 534 U.S. at 210, rejected a reading of § 502(a)(3) that would permit a plaintiff to obtain legal relief simply because an equity court had the power to provide such relief. Aside from these crucial points, Plaintiffs essentially concede backpay was not *typically* available in equity

22

by proceeding under an exception to the general rule that a monetary award constitutes legal relief. An exception to a general rule is, by definition, atypical. See 5 Oxford English Dictionary 498 (2d ed. 1989) (defining "exception" as, among other things, "something abnormal or usual").

Even *assuming* a request for reinstatement remained in this case, the incidental to or intertwined with exception still would not apply. In Tull v. United States, 481 U.S. 412, 414-15 (1987), the Government sued a real estate developer seeking civil penalties and injunctive relief under the Clean Water Act. Defendant sold the property at issue making injunctive relief impractical. The Court held the incidental to or intertwined with exception did not apply. Id. at 424-25. The Court reasoned the Government's claim for $22 million in civil penalties (legal claims) could not be considered "incidental" to the modest (and impracticable) equitable relief requested. Id. The Court further explained the Clean Water Act did not "intertwine" legal and equitable relief because "the Government was free to seek an equitable remedy in addition to, or independent of, legal relief." Id. at 425.

23

Plaintiffs' backpay claim potentially exceeds $90 million.[13]  Like in Tull, the potential backpay award is not merely "incidental" to Plaintiffs' request for reinstatement.  Moreover, § 502(a)(3) does not intertwine equitable relief with legal relief.  "[R]einstatement and backpay are separate, independent kinds of relief, such that [Plaintiffs'] demand for reinstatement does not transform [their] backpay claim into equitable relief."[14]  Waldrop, 24 F.3d at 159 n.11.  Plaintiffs' backpay claim cannot be considered "intertwined" with their dismissed reinstatement claim because Plaintiffs could only seek equitable relief under § 502(a)(3).  See Great-West, 534 U.S. at 221; Tull, 481 U.S. at 425.[15]

---

[13] At oral argument, Plaintiffs did not dispute Defendant's backpay calculations when questioned regarding the incidental to or intertwined with exception.  Rather, Plaintiffs disavowed reliance on the "incidental" portion of the exception.

[14] Plaintiffs reliance on Adams v. Cyprus Amax Minerals Co., 149 F.3d 1156, 1161-62 (10th Cir. 1998) to argue backpay and reinstatement are intertwined is misplaced because backpay and reinstatement are independent types of relief.  In Adams, we held plaintiffs' claim for benefits intertwined with equitable relief.  There, plaintiffs only had a claim for benefits if the court declared them eligible beneficiaries under the ERISA plan.  Id.  In contrast, backpay and reinstatement are in no way dependent upon one another, *and if § 502(a)(3) permitted it*, Plaintiffs could obtain one without the other.

[15] Plaintiffs also argue backpay is equitable because the award is "quintessentially discretionary relief."  (Aple's Br. at 26).  Plaintiffs' argument is off-mark because a federal court does not have discretion to award legal relief under § 502(a)(3).  Great-West, 534 U.S. at 221.  Thus, while "[d]iscretion is indeed characteristic of equity," such characteristic is irrelevant here because "the power to exercise discretion occurs only when the case is found to be equitable; discretionary power does not trigger equity, it results from equity."  Dobbs, Law

(continued...)

24

B.

Plaintiffs next argue their backpay claim is equitable because Congress treated backpay as equitable in the NLRA and Title VII. The NLRA and Title VII provide an agency or court with the power to reinstate an employee with or without backpay.[16] Plaintiffs analogize their ERISA § 510 claim to actions under the NLRA and Title VII. Plaintiffs then conclude Congress intended the remedies under each statute to be the same. *Assuming* Plaintiffs' premise – that ERISA § 510 was modeled in significant part after Title VII's substantive provisions – is correct, we nevertheless disagree with Plaintiffs' conclusion. Plaintiffs' conclusion is flawed because the remedial provisions of ERISA and Title VII are at issue, and in those provisions significant differences exist. See Lorillard v. Pons, 434 U.S. 575, 584 (1978).

1.

___

[15](...continued)
of Remedies § 2.6(3) at 155 n.1.

[16] "Section 10(c) of the [NLRA] empowers the Board, when it finds that an unfair labor practice has been committed, to issue an order requiring the violator to 'cease and desist from such unfair labor practice, and to take such affirmative action including reinstatement of employees with or without backpay, as will effectuate the policies' of the NLRA." Sure-Tan, Inc. v. NLRB, 467 U.S. 883, 898 (1984) (quoting 29 U.S.C. § 160(c)). Section 706(g) of Title VII empowers the court, when it finds an unlawful employment practice has been committed, to "enjoin the [employer] from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without backpay . . . ." 42 U.S.C. § 2000e-5(g)(1).

The Supreme Court has consistently, and most recently in Great-West, rejected analogies to Title VII's remedial provision in interpreting other federal anti-discrimination statutes that do not contain similar language. The primary reason such analogies are unhelpful is because Congress treated backpay in Title VII § 706(g) as part of an equitable remedy. Great-West, 534 U.S. at 218 n.4. In § 706(g), Congress "'treated backpay as equitable' . . . only in the narrow sense that it allowed backpay to be awarded *together with* equitable relief[.]" Id. (internal brackets omitted). In other words, § 706(g) permits an award of backpay together with reinstatement; and when a court orders such affirmative action, the relief may be characterized as equitable. Id. Title VII analogies are inappropriate, on the other hand, when the relief sought is simply a freestanding claim for money damages. Id.

For example, in Terry, 494 U.S. at 572, the Court rejected an analogy to Title VII § 706(g) in considering a backpay claim for breach of the duty of fair representation brought under the Labor Management Relations Act. The Court rejected the analogy because Congress did not make backpay part of an equitable remedy for breach of the duty of fair representation. The Court noted the inappropriateness of the Title VII analogy because remedying the unfair labor practice differed from Title VII's remedial purpose. Id. at 573. Likewise, in Curtis, 415 U.S. at 197, the Court rejected an analogy to Title VII § 706(g) when

26

it interpreted § 812 of the Fair Housing Act, 42 U.S.C. § 3612. The Court rejected the analogy because the language Congress used in § 706(g) "contrast[ed] sharply with § 812's simple authorization of an action for actual and punitive damages." Id. In Lorillard, 434 U.S. at 584-85, the Court again rejected an analogy to Title VII § 706(g) when it interpreted § 7 of the Age Discrimination in Employment Act, 29 U.S.C. § 626, because the statutory language of the two remedial provisions differed significantly.

2.

In ERISA § 502(a)(3), unlike Title VII § 706(g) and NLRA § 10(c), Congress did not specifically make backpay part of an equitable remedy.[17]

---

[17] Plaintiffs' *amici* briefed the legislative history of ERISA § 510. (See Sec'y of Labor Br. at 11; AARP Br. at 2-8). We find no need, however, to delve into ERISA's "voluminous legislative history," see Russell, 473 U.S. at 145-46, because § 502(a)(3)'s plain language provides a clear answer to the question presented. See Harris Trust, 530 U.S. at 254. We further doubt the Supreme Court would place as much emphasis on ERISA's legislative history as Plaintiffs' *amici*. See Russell, 473 U.S. at 146 (explaining the legislative history of § 502(a)(3) "is of little help" in determining the remedies available under that provision). The dissent finds ambiguity in § 502(a)(3) because the provision "does not authorize any specific equitable remedy[.]" (Dissent Op. at 7). From this premise, the dissent reasons that because § 502(a)(3) authorizes reinstatement – an equitable remedy – the statute does not clearly preclude backpay. (Id.). We fail to see the ambiguity in § 502(a)(3) – a provision that *only* authorizes equitable relief – simply because the provision allows an equitable award, such as reinstatement, while simultaneously precluding a legal award, such as backpay. The dissent's reading of § 502(a)(3) renders the modifier "equitable" superfluous. Moreover, the Supreme Court has rejected "strained interpretation[s] of § 502(a)(3) in order to achieve the purpose of ERISA to protect plan participants

(continued...)

27

Compare 29 U.S.C. § 1132(a)(3) with 42 U.S.C. § 2000e-5(g) and 29 U.S.C. § 160(c); see also Great-West, 534 U.S. at 218 n.4.  Further, the remedial provisions of Title VII and the NLRA contrast sharply with § 502(a)(3)'s simple authorization of equitable relief.  See Curtis, 415 U.S. at 197.  Although Congress may have modeled ERISA § 510 after Title VII's substantive provisions, this fact is irrelevant for purposes of interpreting the different remedial schemes under each statute.  See Lorillard, 434 U.S. at 584.

Additionally, the purposes behind ERISA § 502(a)(3) and the NLRA § 10(c), and Title VII § 706(g), are not identical.  The NLRA and Title VII seek to make a plaintiff whole for defendant's discriminatory action.  Ford Motor Co., 458 U.S. at 230, 231 n.15; Landgraf v. USI Film Prod., 511 U.S. 244, 252-53 (1994).  In "sharp contrast," § 502(a)(3) seeks to "vindicate [a] different goal[,]" see Terry, 494 U.S. at 573, namely, to equitably redress any act or practice that violates Title I of ERISA or the plan.  Harris Trust, 530 U.S. at 246; Great-West, 534 U.S. at 221.  ERISA, unlike Title VII and the NLRA, is not a make-whole statute.  Mertens, 508 U.S. at 253, 261-62.  As the Supreme Court explained, "[a] fair contextual reading of the statute makes it abundantly clear that its draftsmen were primarily concerned with possible misuse of plan assets, and with remedies

---

[17](...continued)
and beneficiaries." Mertens, 508 U.S. at 261 (internal quotations omitted); see (Dissent Op. at 7-8).

28

that would protect the entire plan, rather than with the rights of an individual beneficiary." Russell, 473 U.S. at 142. We too have rejected claims for complete relief under ERISA because the statute's purpose is to protect the interests of participants *in employee benefit plans*. See Zimmerman, 72 F.3d at 828; 29 U.S.C. § 1001(b). Consequently, we must conclude that "[w]hatever may be the merit of the 'equitable' characterization in Title VII cases, there is surely no basis for characterizing the award of compensatory . . . damages here as equitable relief." Curtis, 415 U.S. at 197.[18]

## C.

Plaintiffs lastly argue ERISA § 502(a)(3) authorizes backpay because ERISA § 510 protects jobs, in addition to benefits, and the remedy is therefore necessary to make the aggrieved worker whole and deter future violations of the statute. While "[w]e are not oblivious to the force of [Plaintiffs'] policy arguments[,]" Curtis, 415 U.S. at 198, we are not persuaded that such considerations trump the plain language of § 502(a)(3). Plaintiffs' policy

---

[18] Relying on an unpublished decision, Plaintiffs argue we have classified backpay as equitable under ERISA. Meyers v. Colgate-Palmolive Co., 26 Fed. Appx. 855, *862 n.11, 2002 WL 27536 (10th Cir. Jan. 8, 2002). In Meyers, a case filed the same day as Great-West, we mentioned in dicta that § 510 "confines relief to the equitable remedies of backpay, restitution, and reinstatement[.]" Id. Meyers, however, did not include a claim for backpay at all. Rather, we considered the appropriate statute of limitations for a § 510 claim. Id. at 863-64. The panel's holding in Meyers, which did not have the benefit of Great-West, has no bearing on the disposition of Plaintiffs' case.

29

arguments are better addressed to Congress.  See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd., 535 U.S. 722, 733 (2002).

First, as explained above, the remedial purpose of § 502(a) is not to make the aggrieved employee whole.[19]  Mertens, 508 U.S. at 253, 261-62; Russell, 473 U.S. at 138, 142, 148.  Second, Plaintiffs' argument that backpay is necessary to deter "cheating employers" from violating ERISA § 510 goes too far.  Remedies intended to punish or deter wrongdoers were issued in courts of law, not courts of equity.  Tull, 481 U.S. at 422-23.  Third, Plaintiffs' reliance on Varity Corp., 516 U.S. at 515, to argue § 502(a)(3) permits an award of legal relief has been rejected by the Supreme Court.  Great-West, 534 U.S. at 221 n.5.  Plaintiffs remaining arguments dealing with vague notions of ERISA's basic purpose are inadequate to overcome the words Congress used in § 502(a)(3) regarding the *specific* issue under consideration.  Id. at 220; Mertens, 508 U.S. at 261.[20]

---

[19] We also decline Plaintiffs' invitation to craft some type of "constructive" or "hypothetical" reinstatement rule which would allow the district court to award legal relief, and thereby restore an aggrieved employee to the status quo ante, upon a finding that equitable relief might have been available at some juncture during the pendency of the case.  Such a rule would be contrary to the plain language of § 502(a)(3), which only permits an award of equitable relief.  Great-West, 534 U.S. at 221.

[20] The dissent submits the result in this case rewards Defendant for discovery violations that allegedly occurred in the district court and "carves out a method by which employers can violate ERISA in letter and spirit, yet escape the consequences."  (Dissent Op. at 1, 9).  Defendant's alleged discovery violations are not currently before us and it would, of course, be inappropriate to read a

(continued...)

30

## IV.

We are not unsympathetic to Plaintiffs' situation. We note there may have been other means, such as a claim for backpay under the Age Discrimination in Employment Act, for Plaintiffs to obtain the legal relief they sought here. See 29 U.S.C. § 626(b); Great-West, 534 U.S. at 220. ERISA, however, is clear. And we, like the Supreme Court, "are reluctant to tamper with an enforcement scheme crafted with such evident care as the one in ERISA." Russell, 473 U.S. at 147. Section 502(a)(3), by its terms, only allows for *equitable* relief. Great-West, 534 U.S. at 221. Plaintiffs' freestanding claim for backpay – legal relief – is accordingly precluded by § 502(a)(3)'s plain terms. If exceptions to those terms are to be made, "it is for Congress to undertake that task." Guidry v. Sheet Metal Workers Nat'l Pension Fund, 493 U.S. 365, 376 (1990).

---

[20](...continued) remedy into ERISA to sanction Defendant. Russell, 473 U.S. at 145 (explaining the federal judiciary should not engraft a remedy on a statute, no matter how salutary, that Congress did not intend to provide). Instead, Fed. R. Civ. P. 37 exists to curb discovery violations. Moreover, although irrelevant to the certified question, the record does not support the dissent's implication that the litigation protracted for eight years because of Defendant's alleged course of obstruction. Finally, Defendant has compensated Plaintiffs for their lost benefits. Defendants simply are not liable for extra-contractual compensatory damages. Russell, 473 U.S. at 148; Great-West, 534 U.S. at 210.

Consistent with our answer to the question certified pursuant to 28 U.S.C. § 1292(b), the district court's order dated September 25, 2002 is REVERSED insofar as it denied Defendant's motion for summary judgment on the issue of backpay. We REMAND with instructions for the district court to enter an order granting Defendant's motion for summary judgment on the issue of backpay.

03-5124, Millsap v. McDonnell Douglas Corp.
**LUCERO**, J., Circuit Judge, dissenting.

Under the majority's result, the class plaintiffs are entitled to neither reinstatement nor back pay. Not only does the majority's holding fail to deter ERISA violations, it also encourages employers who violate ERISA to delay proceedings as long as possible, "lead[ing] to the strange result that . . . . the most egregious offenders could be subject to the least sanctions." Pollard v. E.I. du Pont de Nemours & Co., 532 U.S. 843, 853 (2001). Because I disagree that Congress intended this result or that precedent demands it, I respectfully dissent.

On December 3, 1993, McDonnell Douglas Corporation announced it was closing its Tulsa, Oklahoma facility. In July 1994, almost ten years ago, Plaintiff James R. Millsap commenced this class action. The class plaintiffs alleged and the district court found that McDonnell Douglas violated § 510 of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461 ("ERISA"), which proscribes an employer's interference with a participant's rights under a qualified benefit plan. Millsap v. McDonnell Douglas Corp., 162 F. Supp. 2d 1262, 1264, 1310 (N.D. Okla. 2001) (Millsap I). Class plaintiffs sought all appropriate equitable relief under § 502(a)(3), including lost benefits, back pay, and reinstatement or front pay in lieu of reinstatement; McDonnell Douglas sought to preclude an award of back pay under ERISA § 502(a)(3).

Finding that the passage of eight years spent in litigation rendered reinstatement impossible and front pay inappropriate, the district court denied

reinstatement and front pay to the class plaintiffs. Millsap v. McDonnell Douglas Corp., No. 94-CV-633-H, 2002 WL 31386076, at *6 (N.D. Okla. Sept. 25, 2002) (Millsap II). However, the district court denied McDonnell Douglas' motion to preclude back pay, determining that the plaintiffs' claim for back pay was equitable in nature. Id. at *5. On interlocutory appeal, we are limited to the following certified question:

> [W]hether, in this ERISA § 510 case and as a result of Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204 (2002), back pay (and, as a result, any other damages based upon back pay) are available as "appropriate equitable relief" to the class members pursuant to ERISA § 502(a)(3).

(Maj. Op. at 3.)

> ERISA § 502(a)(3), under which class plaintiffs seek relief, provides:
>
> A civil action may be brought—(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

29 U.S.C. § 1132(a)(3) (emphasis added). Two seminal Supreme Court cases have interpreted the bounds of "appropriate equitable relief."

One of the Court's first interpretations of § 502(a)(3) appeared in Mertens v. Hewitt Assoc., 508 U.S. 248 (1993). As the majority explains, Mertens involved an action brought under § 502(a)(3) by former employees who alleged that their retirement plan's actuary breached its fiduciary duty; the Court denied

-2-

monetary damages to the petitioners on the ground that the remedy sought was "nothing other than compensatory damages," a remedy typically available at law and not equity. Id. at 255. Outlining the test for "appropriate equitable relief," the Court explained that § 502(a)(3) permits the award of remedies only for "those categories of relief that were typically available in equity (such as injunction, mandamus, and restitution, but not compensatory damages)." Id. at 256, 257–58.

Applying its language from Mertens in a § 502(a)(3) case alleging breach of contract, the Court further defined the bounds of equitable relief in Great-West, 534 U.S. 204. There, the Court again denied relief, characterizing the reimbursement relief sought as an effort "to impose personal liability on [defendant] for a contractual obligation to pay money—relief that was not typically available in equity." 534 U.S. at 210.

The majority relies on these authorities to support its conclusion that back pay is not available as appropriate equitable relief. However, the majority reads too much into the Supreme Court's holdings; neither Mertens nor Great-West expressly preclude back pay as an equitable remedy under ERISA.[1] Instead, the

_____

[1] Although Great-West did not explicitly involve the question of back pay, the Court did consider back pay awards under Title VII in footnote four. 534 U.S. at 218 n.4. There, the Court discussed back pay awards in response to a point raised by Justice Ginsburg's dissent, in which Justice Ginsburg argued that

(continued...)

Court left unresolved the precise issue before us today—whether back pay constitutes appropriate equitable relief under § 502(a)(3). Consistent with Mertens and Great-West, our inquiry turns on whether the relief sought—here, back pay—was typically available in equity. In order to refine this inquiry, Great-West directs courts to "consult[] . . . standard current works such as Dobbs, Palmer, Corbin, and the Restatements, . . . [to] make the answer clear." Great-West, 534 U.S. at 217.

Consulting these sources, I find that none explicitly conclude that back pay is not equitable in nature. To the contrary, the only source cited by the majority that speaks directly to back pay, Dobbs, is less than clear. Although Dobbs first states that back pay "seems on the surface to be an ordinary damages claim, almost an exemplar of a claim at law," it ends with the recognition that "in fact the cases do not yield upon any such single conclusion." 2 Dan B. Dobbs, Law of Remedies, § 6.10(1) at 226 (2d ed. 1993). With respect to wrongful discharge

---

[1](...continued)
because Congress treated back pay as an equitable remedy under Title VII, the restitutionary relief in Great West should also be considered equitable. Id. at 229–230. Disagreeing, the majority contended that Congress never regarded back pay as an inherently equitable remedy, explaining that Congress considered back pay "equitable in Title VII only in the narrow sense that it allowed back pay to be awarded together with equitable relief." Id. (citation omitted). Thus, the Court simply concluded that under Title VII, which explicitly intertwines back pay with reinstatement, back pay is equitable. Id. Moreover, the Court recognized that "Title VII has nothing to do with this case," id., and refrained from inquiring whether the remedy of back pay is typically available in courts of equity.

and job discrimination claims, Dobbs acknowledges that "back pay and reinstatement remedies are usually considered equitable." Id. at 193 (emphasis added). In sum, the guidance provided by Dobbs is scant but suggests the conclusion that with respect to the class plaintiffs who were wrongfully discharged, the back pay remedy is equitable.

The majority's conclusion that back pay is legal in nature is rooted in its analogy to common law compensation. Although the majority recognizes that "reinstatement of the employee and payment for time lost are remedies not known to the common law but created by statute," NLRB v. W. Ky. Coal Co., 116 F.2d 816, 821 (6th Cir. 1940) (Arant, J., dissenting in part), it nonetheless concludes that back pay, which involves monetary relief, is necessarily the same as compensation. Because compensation claims sounded in law under the common law, the majority argues, it follows that the type of relief sought here is also legal in nature.

This proposition turns its back on our own en banc precedent. We have previously recognized that "[a]n award of back pay . . . is an integral part of the equitable remedy of reinstatement and is not comparable to damages in a common law action." Bertot v. School District No. 1, Albany County, 613 F.2d 245, 250 (10th Cir. 1979) (en banc) (quotation omitted). A comparison to common law by analogy is particularly inappropriate because employee reinstatement and back

pay remedies, which were created in the latter half of the twentieth century, displaced "the traditional rule . . . that an 'at will' employee could be discharged at any time and for any reason."  2 Dobbs § 6.10(1), at 190.

Contrary to the majority's conclusion, it is not sufficient to state that because back pay involves monetary relief, it is necessarily legal in nature. Chauffeurs, Teamsters, and Helpers, Local No. 391 v. Terry, 494 U.S. 558, 570 (1990).  "[N]ot all monetary relief is damages," and "[e]quity sometimes awards monetary relief, or the equivalent."  Clair v. Harris Trust & Sav. Bank, 190 F.3d 495, 498 (7th Cir. 1999) (concluding that "restitution is both a legal and an equitable remedy that is monetary yet is distinct from damages"); Allison v. Bank One-Denver, 289 F.3d 1223, 1243 (10th Cir. 2002) (holding in an ERISA case decided after Great-West that monetary relief in the form of  prejudgment interest may be equitable in nature).  Even Great-West, which stated that suits seeking monetary relief are "almost invariably . . . [legal] suits for money damages," 534 U.S. at 210 (quotation omitted), does not compel the result that all suits seeking monetary relief are legal in nature.  Despite the majority's conclusion to the contrary, the case law with respect to this latter point—money damages—prescribes no clear answer.  Thus we look to the language of § 502(a)(3) for instruction.  Harris Trust & Sav. Bank v. Salomon Smith Barney,

Inc., 530 U.S. 238, 254 (2000) ("In ERISA cases, as in any case of statutory construction, our analysis begins with the language of the statute.").

In looking at the plain language of the statute, the majority states that "Congress did <u>not</u> intend to authorize other remedies that it simply forgot to incorporate expressly," (Maj. Op. at 9) (quotation omitted), and therefore that back pay, because it is not explicitly mentioned in § 502(a)(3), is not a recognized form of relief. However, the plain language of the statute is not unambiguous as the majority would have it. To the contrary, the essence of this dispute is over the proper interpretation of the word "equitable" as used in the statute. Although § 502(a)(3) does not authorize any specific equitable remedy, reinstatement indisputably constitutes "appropriate equitable relief" to remedy violations of § 510. <u>Great West</u>, 534 U.S. at 211 n.4; <u>Mertens</u>, 508 U.S. at 256; <u>Griggs v. E.I. Du Pont de Nemours & Co.</u>, 237 F.3d 371, 384 (4th Cir. 2001). Contrary to the majority's conclusion, the plain language of § 502(a)(3) similarly does not clearly preclude back pay as appropriate equitable relief.

Because there is ambiguity as to what constitutes equitable relief, I would look to the legislative history and purpose of ERISA, for the art of statutory interpretation is to promote Congressional intent while avoiding counterproductive results. <u>See e.g.</u>, <u>Pollard</u>, 532 U.S. at 852–54. Congress's intentions are clear in ERISA's statement of policy; it sought to protect "the

interests of participants in employee benefit plans and their beneficiaries . . . by providing for appropriate remedies, sanctions, and ready access to the Federal courts." ERISA § 2(b), 29 U.S.C. § 1001(b). This purpose is equally apparent in the legislative history of ERISA, wherein Congress expressed its intent to "strengthen and improve the protections and interests of participants and beneficiaries of employee pension and welfare benefit plans," S. Rep. No. 93-127, at 1 (1973), and stated that the "primary purpose of the bill is the protection of individual pension rights," H.R. Rep. No. 93-533, at 1 (1973).

Courts have consistently recognized the broad protections ERISA affords employees. "ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans." Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 137 (1990) (quotations omitted). "By its terms § 510 protects plan participants from termination motivated by an employer's desire to prevent a pension from vesting. Congress viewed this section as a crucial part of ERISA because, without it, employers would be able to circumvent the provision of promised benefits." Id. at 143. "Section 510 proscribes changes in employment status based upon benefit motivations," Garratt v. Walker, 164 F.3d 1249, 1255 (10th Cir. 1998) (en banc), and "helps to make [employer's] promises [of benefits] credible." Inter-Modal Rail Employees Ass'n v. Atchison, Topeka & Santa Fe Ry. Co., 520 U.S. 510, 516 (1997) (quotation omitted). Here,

McDonnell Douglas terminated its employees to avoid paying benefits.  This is precisely the factual scenario Congress intended to prevent when it enacted ERISA.  Nonetheless, the majority carves out a method by which employers can violate ERISA in letter and spirit, yet escape the consequences.

Consistent with the purposes of ERISA and contrary to the majority's result, our previous cases that have considered the nature of back pay in other employment contexts have held that back pay is, in fact, equitable.  Cf. Bertot, 613 F.2d at 250 (concluding that in a § 1982 public employee case, "an award of back pay is an element of equitable relief"); DeVargas v. Mason & Hanger-Silas Mason Co. Inc., 911 F.2d 1377, 1381 n.3 (10th Cir. 1990) (citation omitted) ("the bar on recovery of 'money damages' contained in 5 U.S.C. § 702 does not include equitable backpay, which is a form of equitable relief, not monetary damages").[2]

_____

[2]  Other courts considering the nature of back pay in employment discrimination contexts have also classified back pay as equitable.  See, e.g., West v. Gibson, 527 U.S. 212, 217 (1999) (Title VII); Franklin v. Gwinnett County Pub. Sch., 503 U.S. 60, 75 (1992) (Title IX); Consol. Rail Corp. v. Darrone, 465 U.S. 624, 630, 631 n.10 (1984) (Rehabilitation Act); Ford Motor Co. v. EEOC, 458 U.S. 219, 226 n.8 (1982) (Title VII); Albemarle Paper Co. v. Moody, 422 U.S. 405, 419 n.11 (1975) (Title VII); Sandberg v. KPMG Peat Marwick, LLP, 111 F.3d 331, 336 (2d Cir. 1997) (remedies available for violations of Section 510 include "back pay, restitution and reinstatement"); Zimmerman v. Sloss Equip., Inc., 835 F. Supp. 1283, 1293 (D. Kan. 1993) (finding back pay an equitable remedy for § 510 purposes); Pegg v. Gen. Motors Corp., 793 F. Supp. 284, 287 (D. Kan. 1992); but see Oliver-Pullins v. Associated Material Handling Indus., Inc. No. 1:03-cv-0099-JDT-WTL, 2003 WL 21696207, at *3 (S.D. Ind. May 20, 2003) (section 510 claim for back pay is legal and not equitable under
(continued...)

Similarly, it is undisputed that an injunction ordering an employee's return to work—reinstatement—is equitable relief under ERISA § 502(a)(3), Mertens, 508 U.S. at 256; Griggs, 237 F.3d at 384, and that as a general rule, back pay is considered an equitable remedy when it is intertwined with injunctive relief or made an integral part of an overall equitable remedy. Terry, 494 U.S. at 571 ("a monetary award incidental to or intertwined with injunctive relief may be equitable" in nature) (quotation omitted); Tull v. United States, 481 U.S. 412, 424 (1987); Curtis v. Loether, 415 U.S. 189, 197 (1974); see also Adams v. Cyprus Amax Minerals Co., 149 F.3d 1156, 1161 (10th Cir. 1998). In the context of § 510 violations, ERISA § 502(a)(3) authorizes what has been termed in other statutory contexts as the "conventional remedy" of reinstatement with back pay. Sure-Tan, Inc. v. NLRB, 467 U.S. 883, 902 (1984). This equitable remedy is consistent with labor-protective legislation dating back to the New Deal, NLRB v. Jones & Laughlin Steel Corp, 301 U.S. 1, 48–49 (1937), and is consistent with ERISA's primary purposes.

Despite clear precedent that back pay is equitable in nature when integrated with reinstatement, the majority concludes that back pay is not equitable under the present circumstances because back pay and restoration of benefits are the only

___

[2](...continued)
Great-West).

-10-

remedies available in this case. (Maj. Op. at 7 n.3.) However, "[t]he characterization of back pay as legal or equitable has been determined by whether the plaintiff has requested back pay as an adjunct to the equitable remedy of reinstatement, in which case it has been characterized as equitable." Skinner v. Total Petroleum Inc., 859 F.2d 1439, 1444 (10th Cir. 1988). The present class plaintiffs sought both reinstatement and back pay.[3]

"[A]ccording to the prevailing view, where the aggrieved party shows entitlement to equitable relief, but a grant appears to be impossible or impracticable, the court may nevertheless proceed with the case, determine

---

[3] Applying Skinner, the majority also states that back pay is legal under the present facts because the plaintiffs sought primarily legal relief at the onset of this litigation. (Maj. Op. at 4 n.1, 21 n.12.) However, in their Complaint and First Amended Complaint, the class plaintiffs requested "damages in an amount determined to have been sustained by . . . each member of the Plaintiff class [and] . . . restitution to the plans for losses resulting from the breach and any other equitable or remedial relief deemed appropriate by the Court, together with interest and costs of suit." (MDC App. 84–85, 90–94.) (emphasis added.) The case was bifurcated for trial, the liability phase was tried to the bench, and the district court held that McDonnell Douglas had violated ERISA § 510. Millsap II, 162 F. Supp. 2d at 1310.

Following the September 5, 2001 liability order, on September 26, 2001, the parties filed a Joint Status Report which discussed, inter alia, what kinds of relief would be available to the class. There, the class plaintiffs reiterated their intention to seek restoration of benefits and appropriate equitable relief, specifically requesting reinstatement, front pay and back pay. Based on the language in the Complaint and Amended Complaint, I cannot conclude that the class plaintiffs sought primarily legal damages at the onset of this litigation. To the contrary, the class plaintiffs sought both legal and equitable relief in their Complaint, and sought back pay as an adjunct to the equitable remedy of reinstatement in the Joint Status Report.

-11-

disputed issues, and adjust the rights and obligations of the parties, awarding damages or a money judgment" in lieu of the requested equitable remedy. 27A Am. Jur. 2d Equity § 106 (2003); Jicarilla Apache Tribe v. Andrus, 687 F.2d 1324, 1334 (10th Cir. 1982); Schwartz, 45 F.3d at 1023 ("Front pay is awarded . . . when the preferred remedy of reinstatement, indisputably an equitable remedy, is not appropriate or feasible."). In a similar inquiry involving front pay, the Supreme Court has explained that to deny front pay in the case where reinstatement was unavailable and award it in the case where the plaintiff was eventually reinstated "would lead to the strange result . . . . that the most egregious offenders could be subject to the least sanctions." Pollard, 532 U.S. at 583.

The majority's result is similarly disconcerting. Here, reinstatement would have been an appropriate equitable remedy had McDonnell Douglas not so delayed proceedings as to make reinstatement impossible. Thus, through no fault of their own, the class plaintiffs find themselves devoid of the undeniably appropriate equitable remedy of reinstatement. Back pay, which was integral to the relief sought by the plaintiffs at the onset of this litigation, provides an appropriate equitable alternative.

I would conclude that the district court was within its power to provide for back pay as "other appropriate equitable relief" where, as here, the equitable

-12-

remedy of reinstatement is no longer feasible. Because I conclude that back pay is appropriate equitable relief as contemplated by ERISA § 502(a)(3) under the present circumstances, I respectfully **DISSENT**.