■ In the Matter of JOHN R. ASEM, Respondent, v KEY FOOD STORES CO-OPERATIVE, INC., Appellants. WORKERS' COMPENSATION BOARD, Respondent. (And Two Other Related Claims.) [628 NYS2d 874] —Yesawich Jr., J. Appeals from three decisions of the Workers' Compensation Board, filed November 3, 1993, which ruled that the employer's vacation policy violated Workers' Compensation Law § 120.

Claimants in these three related cases contend that their employer's policy of reducing an employee's annual vacation time when he or she has been absent from work for an extended period of time, due to a compensable injury, constitutes impermissible retaliation for claiming benefits provided

by the Workers' Compensation Law (*see*, Workers' Compensation Law § 120). The employer, Key Food Stores Co-operative, Inc., appeals from decisions of the Workers' Compensation Board finding in favor of claimants.

The operative facts are essentially undisputed. In 1986, in response to a dramatic increase in the number of lengthy employee absences (the bulk of which resulted from compensable injuries), Key Food began stringently enforcing an allegedly pre-existing, albeit unwritten, policy, of reducing the vacation time of any employee who had been absent for four weeks or more during the preceding year by an amount proportional to the length of the absence. Theoretically, this vacation reduction policy, which had been utilized sporadically, if at all, prior to 1986, was to be applied to every employee with absences exceeding four weeks duration, with certain exceptions not relevant here. Because the vast majority of long-term absences were precipitated by injury or serious illness, however, few, if any, employees who had not received compensation or disability benefits (*see*, Workers' Compensation Law § 241) were affected.

Significantly, Walter Czajka, who had served as Key Food's comptroller during the relevant time period, could not name a single employee whose vacation time had been decreased, but who had not received Workers' Compensation or disability benefits, and he admitted that 90% of those affected had suffered job-related injuries. More cogent, however, was Czajka's admission that the policy was not, insofar as he knew, applied when an employee had intermittent absences totaling a period of four weeks; reductions were imposed only if there was an uninterrupted absence of that duration. Consequently, although the policy was purportedly enforced in an attempt to recover work time lost due to absence, it was not, as Key Food contends, "applied evenhandedly to all employees" (*Matter of Duncan v New York State Dev. Ctr.*, 63 NY2d 128, 134) solely on the basis of the amount of work time missed.

An employer seeking to dissuade its employees from pursuing their rights is likely to do so "by subtle rather than obvious methods" (*Matter of Axel v Duffy-Mott Co.*, 47 NY2d 1, 6). As a result, direct evidence of retaliatory motive is often difficult to obtain (*see*, *Matter of Conklin v City of Newburgh*, 205 AD2d 841, 842). Given the foregoing, it is not imprudent, in our view, to consider, as some indication of improper motive, the fact that an otherwise apparently neutral policy has a disparate impact on those exercising protected rights. Where, as here, no legitimate business purpose is discernible for a

policy that appears to have been carefully fashioned, and differentially applied, so as to detrimentally affect only those who have claimed compensation or disability benefits, it is logical to infer that it has been implemented particularly to discourage such claims. It was not unreasonable, therefore, for the Board to conclude, on this record, that claimants satisfied their burden of proving that Key Food's policy, which was concededly enforced as a direct result of the unusually high number of compensation and disability claims made by its employees, constitutes improper retaliation against those employees in violation of Workers' Compensation Law § 120.

Key Food also contends that reversal is warranted because the first Workers' Compensation Law Judge (hereinafter WCLJ), whose decision was ultimately adopted by the Board, engaged in an assertedly inappropriate ex parte communication with claimant John R. Asem concerning the merits of his claim. Key Food arguably waived this argument when, upon learning the details of the WCLJ's prehearing conversation with Asem, it failed to raise any objection to the WCLJ continuing in his adjudicatory role. Beyond that, there is not a shred of evidence suggesting that the WCLJ's ultimate decision in this matter was in any way influenced by this exchange (cf., Matter of Grant v Senkowski, 146 AD2d 948, 949-950) which, the record demonstrates, consisted of nothing more than the WCLJ's response to a question posed by Asem, directing him to the proper place to file a claim.

Mikoll, J. P., Crew III, White and Peters, JJ., concur. Ordered that the decisions are affirmed, with costs to claimants.