■ In the Matter of the Claim of JULIO A. RODRIGUEZ, Claimant, v C&S WHOLESALE GROCERS, INC., Appellant. WORKERS' COMPENSATION BOARD, Respondent. [968 NYS2d 728]—

Egan Jr., J. Appeal from a decision of the Workers' Compensation Board, filed April 17, 2012, which ruled that claimant was discharged by the employer in violation of Workers' Compensation Law § 120.

On January 19, 2011, claimant was hired by C&S Wholesale Grocers, Inc. (hereinafter the employer) for the position of order selector—a job that consisted of moving large pallets of grocery goods in preparation for shipment to the employer's customers. As part of his duties, claimant was required to operate a motorized pallet jack to move the heavy pallets throughout the warehouse, and he was trained to use this equipment pursuant to the employer's safety guidelines.

At the time claimant commenced his employment, he signed a "Trainee Attendance/Safety Policy" acknowledging, among other things, that "if [he was] injured in a preventable accident within [the] first 90 day probationary period, [he would] automatically forfeit [his] right to work" for the employer. On April 12, 2011, approximately one week before the end of

claimant's 90-day probationary period, he injured his left foot while operating a pallet jack. Claimant immediately reported the incident to the employer, sought medical treatment and remained out of work for a few days. Upon returning to work, claimant was notified that his employment had been terminated pursuant to the terms of the 90-day policy because the employer had determined that his injury was preventable—specifically, that such injury was caused by claimant's unsafe operation of the pallet jack in violation of the employer's safety rule.

Claimant thereafter filed a claim for workers' compensation benefits and, additionally, filed a discrimination complaint against the employer under Workers' Compensation Law § 120, contending that he had been terminated in retaliation for seeking workers' compensation benefits.[1] Following a hearing on the discrimination complaint, a Workers' Compensation Law Judge (hereinafter WCLJ) concluded that the employer's policy—as applied to claimant and in general—constituted prohibited discrimination in violation of Workers' Compensation Law § 120. The WCLJ's decision was affirmed by the Workers' Compensation Board, prompting this appeal by the employer.

We affirm. Workers' Compensation Law § 120 prohibits an employer from discriminating against an employee because that employee either claimed or attempted to claim workers' compensation benefits (*see Matter of Torrance v Loretto Rest Nursing Home*, 61 AD3d 1124, 1125 [2009]; *Matter of Morgan v New York City Dept. of Correction*, 39 AD3d 891, 892 [2007], *lv denied* 9 NY3d 803 [2007]). In enacting Workers' Compensation Law § 120, the Legislature intended "to insure that a claimant [could] exercise his [or her] rights under the [Workers'] Compensation Law . . . without fear that doing so [might] endanger the continuity of [his or her] employment" (Sponsor's Mem, Bill Jacket, L 1973, ch 235; *see Matter of Duncan v New York State Dev. Ctr.*, 63 NY2d 128, 133-134 [1984]; *Matter of Axel v Duffy-Mott Co.*, 47 NY2d 1, 5-6 [1979]; Mem of Dept of Labor, L 1973, ch 235, 1973 NY Legis Ann at 244).[2] Inasmuch as employers who seek to discourage their employees from pursuing workers' compensation claims "rarely broadcast their intentions to the world," distinguishing a discharge motivated by retaliation from a discharge based upon a legitimate business

---

**1.** Notwithstanding this representation, the record reflects that claimant did not actually apply for such benefits until after his employment had been terminated.

**2.** Notably, the statute has been found to apply to situations wherein "the mere prospect" of the filing of a claim motivates the employer to engage in a preemptive retaliatory discharge (*Matter of Buzea v Alphonse Hotel Corp.*, 289 AD2d 749, 751 [2001]).

concern can be challenging (*Matter of Axel v Duffy-Mott Co.*, 47 NY2d at 6; *see Matter of Buzea v Alphonse Hotel Corp.*, 289 AD2d 749, 750-751 [2001]; *Matter of Asem v Key Food Stores Co-Op.*, 216 AD2d 806, 807 [1995], *lv denied* 87 NY2d 802 [1995]).

Here, the employer's 90-day policy provides that if a probationary employee is injured in a preventable accident—a determination that is made by the employer[3]—he or she automatically "forfeit[s] [his or her] right to work" for the employer. Where, however, a probationary employee is "observed not working safely" but the underlying misconduct does not actually result in an injury, such employee does not automatically forfeit his or her right to employment; rather, the employee is "subject to [an] accelerated disciplinary action up to and including termination." Indeed, when questioned by the WCLJ as to the likely consequence for a new employee who violated one of the employer's safety rules but was not injured as a result thereof, the employer's director of training and development testified that the infraction would be noted in the employee's file and other penalties, including suspension and lost pay, may be imposed.

Although the record reveals that the employer's 90-day policy is applied evenhandedly and—purportedly—is aimed at promoting workplace safety, the policy nonetheless has a discernible impact upon probationary employees who are injured in work-related accidents, i.e., employees who potentially could seek workers' compensation benefits. The policy effectively categorizes probationary employees into two groups: those who violate safety rules but are not injured, and those who violate safety rules and are injured—with only the latter group automatically forfeiting their right to work for the employer (*see Matter of Asem v Key Food Stores Co-Op.*, 216 AD2d at 807-808). Such a policy dissuades those probationary employees who are injured in the course of their employment and wish to remain employed from reporting their injury and pursuing workers' compensation benefits, which, in turn, runs counter to the Legislature's intended purpose of insuring that employees can exercise their rights under the compensation statutes "without fear that doing so may endanger the continuity of [their] employment" (Sponsor's Mem, Bill Jacket, L 1973, ch 235).[4]

---

3. The employer's safety supervisor testified that approximately 90% of the accidents that occur are considered by the employer to be preventable.

4. The employer's reliance upon *Matter of Duncan v New York State Dev. Ctr.* (63 NY2d 128 [1984]) does not compel a different conclusion, as that case

To the extent that the employer now argues that claimant was not terminated pursuant to the 90-day policy and, thus, his termination did not violate Workers' Compensation Law § 120, this claim directly contradicts the arguments put forth by the employer both before the WCLJ and the Board. In any event, a review of the record reveals that there is substantial evidence to support the Board's determination that claimant was terminated pursuant to such policy and, therefore, we find no basis to disturb the Board's decision (*see Matter of Little v Gaines Elec. Contr., Inc.*, 36 AD3d 1056, 1057 [2007]; *Matter of Gibson v Carrier Corp.*, 307 AD2d 616, 618-619 [2003]; *Matter of Buzea v Alphonse Hotel Corp.*, 289 AD2d at 751-752). The employer's remaining contentions, including its assertion that it was deprived of a full and fair opportunity to develop the record, have been examined and found to be lacking in merit.

Peters, P.J., Lahtinen and Stein, JJ., concur. Ordered that the decision is affirmed, without costs.

dealt with the interplay between Workers' Compensation Law § 120 and an employer's ability to terminate an employee who had incurred a long-term absence from employment.